**ATLANTIC STATES LEGAL FOUNDATION, INC.,**
Plaintiff,

v.

**WHITING ROLL–UP DOOR MANUFACTURING CORP.,**
Defendant.

No. CIV–90–1109S.

United States District Court,
W.D. New York.

Sept. 3, 1991.

Charles M. Tebutt, Allen, Lippes & Shonn, Buffalo, N.Y., James M. Hecker, of counsel to Environmental Action, Inc., The Natural Resources Defense Council, Public Interest Research Group of New Jersey, Inc., amici for plaintiff.

Jerrold S. Brown, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., for defendant.

### ORDER

SKRETNY, District Judge.

### INTRODUCTION

Now before this Court is the motion of defendant Whiting Roll–Up Door Manufacturing Corp. ("defendant") to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), respectively. Alternatively, defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56.

This lawsuit is a citizen's enforcement action arising under the Emergency Planning and Community Right–To–Know Act ("EPCRA"), 42 U.S.C. §§ 11001 *et seq.*[1] In Counts One through Three of the Complaint, plaintiff Atlantic States Legal Foundation, Inc. ("plaintiff") alleges that the defendant has failed to submit timely certain hazardous chemical information to proper state and federal authorities pursuant to EPCRA's reporting provisions, §§ 311, 312 and 313, 42 U.S.C. § 11021, 11022, and 11023 ("§ 311" "§ 312" "§ 313"), respectively, for the 1987–1989 reporting years. With regard to §§ 311 and 312 compliance, the plaintiff concedes that as of the date of suit the defendant has filed all required information. However, the plaintiff maintains that EPCRA authorizes a citizen suit, such as this, to recover civil penalties for wholly past violations, that is, where the defendant has "come into" compliance with EPCRA's reporting provisions before the plaintiff commenced suit. With respect to § 313, the plaintiff contends that it has a good faith belief, as of the date it filed this lawsuit, that the defendant continues to be a nonreporter under that provision.

Plaintiff seeks the following relief: 1) a declaratory judgment regarding defendant's liability for failure to meet the reporting requirements under EPCRA; 2) pursuant to EPCRA § 325(c), 42 U.S.C. § 11045 ("§ 325"), civil penalties for violations of §§ 311–313 for the 1987–1989 reporting years; 3) permanent injunctive relief prohibiting further EPCRA violations; and 4) attorneys' fees and costs.

Moving to dismiss this lawsuit, the defendant argues that EPCRA does not afford citizens, such as plaintiff, a right to sue for wholly past violations. Since, according to the defendant, the evidence demonstrates defendant's compliance with all of EPCRA's reporting provisions before plaintiff filed this lawsuit, the defendant argues that this Court lacks jurisdiction of plaintiff's lawsuit. Because the thrust of the defendant's motion is that this Court lacks

authority under EPCRA to hear plaintiff's claim, this Court shall treat the defendant's motion as one pursuant to Fed.R.Civ.P. 12(b)(1).

In support of its motion, the defendant submits a legal memorandum ("d. memo"); a reply memorandum, the affidavit of Paul Meosky, Esq. ("Meosky"); the affidavit of Michael Whiting with exhibits ("Whiting") and the affidavit of Jerrold S. Brown, Esq.

In opposition to the defendant's motion, the plaintiff submits a legal memorandum ("p. memo."); the affidavit of Charles Tebbutt, Esq. ("Tebbutt"); and the affidavit of James Keane ("Keane"). Also, on behalf of the plaintiff, the Natural Resources Defense Counsel, Environmental Action, Inc. and the Public Interest Research Group of New Jersey, Inc. have, with permission of this Court, submitted an Amicus Curiae brief.

In ruling on the defendant's motion, this Court has considered all these submissions and oral argument held on March 19, 1991.

*Conclusion:* For the reasons set forth below, this Court denies the defendant's motion to dismiss the Complaint.

## EPCRA GENERALLY

A consultation of the entirety of EPCRA's provisions reveals that the statute has two central objectives: public access to centralized information, at a reasonably localized level, concerning hazardous chemicals used, produced or stored in the community and the use of this information to formulate and administer local emergency response plans in case of a hazardous chemical release.

To achieve these objectives, EPCRA contains three reporting provisions, §§ 311–313, which require owners or operators of a facility, as that term is defined at § .329(4), 42 U.S.C. § 11049(4), to submit certain specified information with respect to hazardous chemicals maintained at threshold levels to responsible state, local and, in the

---

**1.** Enacted in 1986, EPCRA is Title III of the Superfund Amendments and Reauthorization

Act ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613.

case of § 313, federal authorities. Additionally, EPCRA §§ 301–305 provide for the formation of state and local emergency response commissions and planning committees designed to receive and collect this reported information, make the information available to the public, and develop emergency response plans should a chemical release occur.

In this lawsuit, the plaintiff alleges that the defendant has failed to meet EPCRA's reporting requirements. This Court will now address those requirements in greater detail.

## A. *EPCRA's Reporting Requirements*

As noted above, EPCRA contains three provisions, §§ 311–313, which require an owner or operator of a facility to submit information concerning hazardous chemicals to state, local and sometimes federal officials.

§ 311(a)(1) provides that an owner or operator of any facility which is required to prepare a Material Safety Data Sheet ("MSDS") for a hazardous chemical under the Occupational Safety and Health Act ("OSHA") "... shall submit ..." a MSDS for each chemical to the State emergency response commission, a local emergency planning committee and the local fire department. Alternatively, instead of filing a MSDS, an owner or operator may file a list of chemicals ("List") for which OSHA requires the filing of a MSDS, along with other information required on the MSDS. With respect to an initial compliance date, § 311(d)(1) states:

(1) The initial material safety data sheet or list required under this section with respect to a hazardous chemical shall be provided before the later of—

(A) 12 months after October 17, 1986, or

(B) 3 months after the owner or operator of a facility is required to prepare or have available a material safety data sheet for the chemical under the Occupational Safety and Health Act of 1970 ... and regulations promulgated under that Act.

Although § 311 does not require annual reporting, § 311(d)(2) requires a facility to update its MSDS or List to reflect "... significant new information concerning an aspect of a hazardous chemical...."

§ 312 provides that an owner or operator of a facility required by OSHA to prepare or have available a MSDS "... shall prepare and submit ..." an emergency and hazardous chemical inventory form ("Inventory Form") to the State emergency response commission, a local emergency planning committee and the local fire department. § 312(c) verifies that a hazardous chemical subject to § 312's reporting requirement is any hazardous chemical for which § 311 also requires the filing of a MSDS or List. § 312(a)(2) permits a facility to file an inventory form containing either Tier I information or Tier II information, as those terms are defined in § 312(d). With respect to an initial compliance date, § 312(a)(2) provides that the initial Tier I or Tier II Inventory Form "... shall be submitted on or before March 1, 1988, and annually thereafter on March 1, and shall contain data with respect to the preceding calendar year."

§ 313 requires completion of a Toxic Chemical Release Inventory Form, commonly known as the EPA Form R ("Form R"), for those chemicals which are included on the "List of Section 313 Chemicals," contained at 40 C.F.R. § 372.65. Facilities which release certain toxic chemicals must report total emissions of these toxic chemicals to the United States Environmental Protection Agency ("EPA") and to State officials. With respect to an initial compliance date, § 313(a) provides that the initial Form R "... shall be submitted to the Administrator and to an official or officials of the States designated by the Governor on or before July 1, 1988, and annually thereafter on July 1 and shall contain data reflecting releases during the preceding calendar year."

## B. *EPCRA Citizen Suit Enforcement & Civil Penalty Provisions*

With respect to a citizen's right to sue an owner or operator for failure to meet EPCRA's reporting requirements, § 326, 42 U.S.C. § 11046 ("§ 326"), contains EP-

CRA's citizen enforcement provision. § 326 provides:

(a) Authority to bring civil actions

(1) Citizen suits

Except as provided in subsection (e) of this section, any person may commence a civil action on his own behalf against the following:

(A) An owner or operator of a facility for failure to do any of the following:

(i) Submit a follow-up emergency notice under section 11004(c) of this title.

(ii) Submit a material safety data sheet or a list under section 11021(a) of this title.

(iii) Complete and submit an inventory form under section 11022(a) of this title containing tier I information as described in section 11022(d)(1) of this title unless such requirement does not apply by reason of the second sentence of section 11022(a)(2) of this title.

(iv) Complete and submit a toxic chemical release form under section 11023(a) of this title....

With respect to violations of EPCRA's reporting requirements § 326 must be read in conjunction with § 325, 42 U.S.C. § 11045 ("§ 325"), EPCRA's civil penalty provision. § 325(c) provides:

(1) Any person (other than a governmental entity) who violates any requirement of section 11022 or 11023 of this title, shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation.

(2) Any person (other than a governmental entity) who violates any requirement of section 11021 or 11043(b) of this title, and any person who fails to furnish to the Administrator information required under section 11042(a)(2) of this title shall be liable to the United States for a civil penalty in an amount not to exceed $10,000 for each such violation.

(3) Each day a violation described in paragraph (1) or (2) continues shall, for purposes of this subsection, constitute a separate violation.

(4) The Administrator may assess any civil penalty for which a person is liable under this subsection by administrative order or may bring an action to assess and collect the penalty in the United States district court for the district in which the person from whom the penalty is sought resides or in which such person's principal place of business is located.

With these provisions in mind, this Court now addresses the facts of this case.

### FACTS

Plaintiff is a not-for-profit citizens environmental organization. (Complaint, ¶ 6; p. memo., p. 2). Defendant is an industrial facility located in Akron, New York engaged in the business of manufacturing roll-up and hinged doors. (Whiting, ¶ 2).

On May 25, 1990, defendant received a Notice Of Intent To Sue letter ("Notice Letter") dated May 15, 1990 from Charles Tebbutt, Esq. ("Tebbutt"), counsel for the plaintiff. The Notice Letter stated, in accordance with § 326(d), that upon expiration of sixty (60) days from the date of the letter, "... the Atlantic States Legal Foundation will file a civil action in federal district court ..." pursuant to the citizen suit provision contained in § 326(a). The Notice Letter identified alleged violations of EPCRA's reporting provisions, §§ 311, 312 and 313, as the reason for plaintiff's imminent suit. Specifically, the Notice Letter alleged that the defendant had

... failed to accurately complete and submit:

A. Material Safety Data Sheets by October 17, 1987 pursuant to Section 311 of EPCRA, 42 U.S.C. § 11021;

B. Emergency and Hazardous Chemical Inventory Forms by March 1, 1988, and annually thereafter, pursuant to Section 312 of EPCRA, 42 U.S.C. 11022; and

C. Toxic Chemical Release Forms (EPA Form Rs) by July 1, 1988, and annually

thereafter, pursuant to Section 313 of EPCRA, 42 U.S.C. 11023.

(Whiting, exh. A).

On July 16, 1990, Michael Whiting, a Vice–President of the defendant, mailed the following information for the 1989 reporting year to The New York State Emergency Response Commission and the Erie County Department of Emergency Services, hand delivering a copy to the Akron Fire Department: 1) a List of hazardous chemicals present in defendant's plant pursuant to § 311 (Whiting, ¶ 4(a) and exh. B thereto); and 2) Tier II Inventory Forms pursuant to § 312. (Whiting, ¶ 4(b) and exh. C thereto).

On July 20, 1990, Michael Whiting mailed to The New York State Emergency Response Commission and the Erie county Department of Emergency Services, hand delivering a copy to the Akron Fire Department, the same information for the 1987 and 1988 reporting years. (Whiting, ¶ 5 and exhs. D–G thereto).

On August 21, 1990, Michael Whiting mailed to The New York State Emergency Response Commission and the Erie county Department of Emergency Services, hand delivering a copy to the Akron Fire Department, a revised § 311 list and Tier Two Inventory Forms for the 1987–1989 reporting years. (Whiting, ¶ 6 and exh. H thereto).

On June 28, 1990, Michael Whiting mailed a Form R for the 1989 reporting year to the EPA EPCRA Reporting Center and the New York State Emergency Response Commission. (Whiting, ¶ 7 and exh. I thereto).

On July 25, 1990, Michael Whiting mailed a revised Form R for 1989 and Form Rs for the 1987 and 1988 reporting years, to the same entities. (Whiting, ¶ 8 and exhs. J–L thereto).

By letter dated August 22, 1990, Michael Whiting transmitted copies of the above referenced §§ 311, 312 and 313 filings to Tebbutt. (Whiting, ¶ 9 and exh. M thereto).

On October 30, 1990, plaintiff commenced this lawsuit.

## DISCUSSION

### A. *EPCRA's Authorization Of Citizen Suits For Past Violations*

The plaintiff does not dispute that the defendant submitted § 311 Lists and § 312 Inventory Forms for the 1987–1989 reporting years before plaintiff filed this lawsuit.[2] It is also undisputed that prior to receiving plaintiff's Notice Letter, the defendant failed to file the required information under §§ 311, 312 and 313. (Whiting ¶¶ 4–8; Tebbutt, ¶ 4).

Maintaining that EPCRA authorizes citizen suits for wholly past reporting violations, that is, for late filed reports which have been filed by the time of suit, plaintiff seeks, *inter alia,* civil penalties for the defendant's failure to report according to the initial compliance dates contained in §§ 311–313.

Defendant moves for dismissal based on this Court's lack of subject matter jurisdiction arguing that the Complaint alleges no continuing violations of EPCRA's reporting provisions. The defendant contends that EPCRA does not afford citizens the right to sue for failure to report under §§ 311–313 where the defendant has filed the required reports before the lawsuit is filed.

▇▇ Thus this Court must decide this narrow issue: Does EPCRA authorize citizen suits for reporting violations which are not continuing at the time the lawsuit is filed. This is an issue of first impression. Having considered all arguments, based on the statute's plain language and the legislation's underlying purpose, which is well documented by its legislative history, this Court must conclude in the affirmative.

2. Plaintiff does dispute whether the defendant has submitted Form Rs pursuant to § 313 for the 1987 and 1988 reporting years, although the defendant contends that it did submit such Form Rs. This Court will separately address the defendant's submission of Form Rs below.

However, for purposes of this discussion, this Court assumes, *arguendo,* that the defendant has submitted Form Rs for the 1987 and 1988 reporting years prior to the commencement of this lawsuit.

Absent "... a clearly expressed legislative intention to the contrary," this Court must conclusively rely on the words of the statute." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Accordingly, since this Court locates no legislative intention to the contrary, it initially examines the plain language of EPCRA.

The plain language of EPCRA's reporting, enforcement and civil penalty provisions, when logically viewed together, compel a conclusion that EPCRA confers federal jurisdiction over citizen lawsuits for past violations.

As noted above, § 326(a)(1) authorizes citizen suits against an owner or operator for "... failure ..." to, *inter alia*, submit an MSDS or List pursuant to § 311; complete and submit an Inventory Form pursuant to § 312; or complete and submit a Form R pursuant to § 313. Sections 325(c)(1) and (2) authorize citizen suit civil penalties against "[a]ny person (other than a government entity) who violates any requirement ..." of §§ 311, 312 or 313. As also noted above, EPCRA's reporting provisions establish mandatory dates for initial compliance.[3]

■ It logically follows that these mandatory compliance dates must be considered to constitute §§ 311–313 "requirements" for purposes of the citizen suit civil penalty provision under § 325, as Congress' choice of the word "shall" in §§ 311–313 indicates.

In this case, it is undisputed that the defendant failed to report information pursuant to §§ 311–313 by the compliance dates therein. The defendant argues that as of the date plaintiff commenced this lawsuit, there was no "... failure to do the submissions required by the statute." (d. memo, p. 7). Defendant's interpretation of the statute is far too restrictive, however,

for according to the statute's plain language, the compliance dates constitute requirements of the reporting provisions; the unequivocal language of §§ 311–313 requires initial reporting on dates certain. Thus, this Court cannot reconcile the defendant's interpretation with EPCRA's civil penalty provision which authorizes civil penalties against "[a]ny person ... who violates any requirement ..." of EPCRA's reporting provisions. § 325(c)(1) & (2).

Moreover, this Court's acceptance of the defendant's interpretation would render gratuitous the compliance dates for initial submissions which Congress placed in EPCRA's reporting provisions.

EPCRA's underlying purpose, well documented by its legislative history, supports the conclusion that citizens may sue for violations which no longer continue at time of suit.

The introductory statement contained in H.REP. NO. 99–253, to accompany H.R. 2817 which was by in large adopted by H.R. 2005, the bill ultimately passed by Congress, states:

### COMMUNITY RIGHT TO KNOW

A program is established that will provide the public with important information on the hazardous chemicals in their communities. The program would require each owner or operator of a facility at which a hazardous chemical is produced, used, or stored to supply information on material safety date sheets (MSDS) about each hazardous chemical to state and local officials. The state and local officials, designated by the governor of each state, would make this information available to the public.

HOUSE COMMITTEE ON ENERGY AND COMMERCE, SUPERFUND AMENDMENTS OF 1986, H.REP. NO. 253, 99th Cong., 2d Sess. (1986) *reprinted in* 1986

---

**3.** As quoted in full above, § 311(d) provides that the initial MSDS be provided "... before the later of—(A) 12 months after October 17, 1986, or (B) 3 months after the owner or operator of a facility is required to prepare or have available ..." a MSDS under OSHA. § 312(a)(2) provides that the initial Tier I or Tier II Inventory

Form "... shall be submitted on or before March 1, 1988, and annually thereafter on March 1...." § 313(a) provides that the initial Form R "... shall be submitted ... on or before July 1, 1988, and annually thereafter on July 1...."

U.S.Code Cong. & Admin.News 2835, 2841. Similarly, the preamble to the Conference report describes the Senate and House versions of EPCRA as

> ... programs to provide the public with important information on the hazardous chemicals in their communities, and to establish emergency planning and notification requirements which would protect the public in the event of a release of hazardous chemicals.

H.CONF.REP. NO. 962, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 3276.

The required filing of the MSDS pursuant to § 311 is obviously a critical first step to achieving the intent of EPCRA, for without the filing of this information, state and local officials would have no way of receiving the necessary information regarding hazardous chemicals to make available to the public and to formulate an effective emergency response plan.[4] Thus, Congress was concerned that "[o]nce the material data sheets are developed, it is crucial that they may be made available to he public in the quickest, most efficient way possible." H.Rep. No. 253, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2893.

The legislative history also demonstrates Congress' particular concern that hazardous chemical information be readily accessible at the community level. Accordingly, with respect to public availability to hazardous chemical information disseminated via the MSDS, H.REP. NO. 99–253 states:

> ... all population groups that are located in an area where they may come in contact with a hazardous chemical, whether it is because they are near a chemical manufacturing plant or a plant which uses the chemical, must have reasonable access to the information. This means that they should not have to travel a great distance to reach the nearest repository. Furthermore, the repository should be open at reasonable hours.

*Id.*

As these passages indicate, Congress designed the concept of the emergency response plan, which necessarily depends on accurate and current information, as a public safety measure in case of a hazardous chemical release. Thus, the legislative history often refers to protection of the public health and environment. *See, e.g.,* H.REP. NO. 99–253 ("[e]ach Emergency Response Plan must be designed to protect public health and the environment in the event of a hazardous substance emergency....") (*Id.,* 1986 U.S.Code Cong. & Admin.News at 2896).

As noted above, and as evident from these statements, EPCRA embodies two fundamental objectives: public access to information concerning hazardous chemicals in the community and use of this information to formulate and administer local emergency response plans in case of a hazardous chemical release. The relative achievement of these objectives, then, depends on accurate and current information. Via the reporting requirements contained in §§ 311–313, Congress has placed the burden on facility owners or operators to submit this information to appropriate officials who can then implement an emergency response plan. If owners or operators fail to comply with the reporting requirements, including the mandatory compliance dates, the development and success of emergency response plans would be seriously, if not critically, undercut, and the entire thrust of EPCRA could be defeated. To the extent owners and operators, such as the defendant, delay reporting beyond the compliance dates which Congress placed in §§ 311–313, the public has access to less information and emergency response plans are based on incomplete information. Moreover, the public has no mechanism to ensure the accuracy of information which is unreported. EPCRA provides that mechanism. Clearly, for all these reasons, to overlook EPCRA's reporting deadlines would subvert the objectives of EPCRA.

In support of its motion, the defendant relies on *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49,

---

**4.** The same concern holds true for the prompt filing of the Inventory Form pursuant to § 312.

752

108 S.Ct. 376, 98 L.Ed.2d 306 (1987), where the Supreme Court held the citizen suit provision of the Clean Water Act, § 505(a), 33 U.S.C. § 1365(a) ("505(a)"), did not confer federal jurisdiction over citizen suits for wholly past violations.

In *Gwaltney*, the citizen suit provision of the Clean Water Act provided in relevant part that

> ... any citizen may commence a civil action on his own behalf—
> (1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation....

*Id.* 484 U.S. at 55, 108 S.Ct. at 380.

Examining the plain statutory language, the statutory scheme, and the statute's legislative history the Supreme Court concluded that the "... alleged to be in violation ..." language did not confer federal jurisdiction of citizen lawsuits for wholly past violations.

Initially the Court found that, although ambiguous, the "... to be in violation ..." clause contemplated a "... continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." Rejecting the argument that Congress committed a careless accident by incorporating this language and citing the Clean Air Act, 42 U.S.C. § 7604, as an example, the Court noted that Congress used "... identical language ..." in citizen suit provisions contained in other statutes which authorized only prospective relief. *Id.*, 484 U.S. at 57, 108 S.Ct. at 381. The Court emphasized that "... the pervasive use of the present tense ..." throughout § 505 buttressed the conclusion that the provision contemplated only prospective application. *Id.*, 484 U.S. at 59, 108 S.Ct. at 382.

Next, the Court found the Clean Water Act's notice provision irreconcilable with an interpretation that citizen suits may address wholly past violations. § 505(b)(1)(A) requires that citizens give 60 days notice of their intent to sue to the alleged violator, EPA Administrator and appropriate State officials. Since, pursuant to § 505(b)(1)(B), the commencement of an enforcement action by the Administrator or State within the 60 day notice period barred a citizen enforcement suit, the Court concluded, "... [i]t follows logically that the purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the [Clean Water] Act and thus likewise render unnecessary a citizen suit." Therefore, the Court said, if citizen suits could target solely past violations, the notice requirement to past violators "... becomes gratuitous." *Id.*, 484 U.S. at 60, 108 S.Ct. at 382–83.

Lastly, the Court found that the legislative history of the Clean Water Act supported the conclusion that its citizen suit provision remained inapplicable to suits for past violations. *Id.*, 484 U.S. at 61–63, 108 S.Ct. at 383–84.

However, this Court finds *Gwaltney* distinguishable from this case. The factors cited by the Supreme Court to support its holding that the Clean Water Act did not authorize citizen suits for wholly past violations are substantially diminished with respect to EPCRA in this case.

First, the plain language of EPCRA's citizen suit provision is different than its Clean Water Act counterpart. Section 326 authorizes citizen suits for an owner's or operator's "failure to" comply with EPCRA's reporting requirements, while § 505 authorizes citizen suits against a person "... who is alleged to be in violation ..." of certain provisions of the Clean Water Act. The natural reading of the EPCRA provision at least would seem to include past acts of noncompliance, while a natural reading of the Clean Water Act provision, as the Supreme Court has held, indicates that the statute contemplates only prospective relief. This reading of § 326, of course, is supported by viewing § 326 along with § 325 which authorizes civil penalties against "[a]ny person ... who violates any requirement ..." of EPCRA, including its reporting provisions which require initial submissions by dates certain.

Moreover, unlike § 505 of the Clean Water Act, EPCRA § 326 does not contain

"pervasive use of the present tense ..." which might indicate its restricted applicability to continuing or intermittent violations. In fact, the venue provision contained at § 326(b)(1) states that "[a]ny action under subsection (a) of this section against an owner or operator of a facility shall be brought in the district court for the district in which the alleged violation occurred." [5] Contrary to the defendant's interpretation, this clause arguably suggests that § 326 contemplates past violations.

Although § 326(d)(1)(2) contains a notice provision like that in the Clean Water Act before the Court in *Gwaltney*, since *Gwaltney* Congress has demonstrated that, in its view, such a notice provision is not irreconcilable with an authorization of suit for wholly past violations. Recently Congress amended the Clean Air Act citizen suit provision, 42 U.S.C. § 7604(a), to afford citizens the right to sue for past violations although Congress left a similar 60 day notice provision intact.[6] Therefore, the fact that Congress amended the Clean Air Act citizen suit provision to allow suits for past violations while simultaneously leaving the Clean Air Act's notice provision unchanged undercuts the importance of the Supreme Court's discussion in *Gwaltney* that Congress would not have placed such a notice provision in a statute where it also intended authorize citizen suits for past violations.

In sum, this Court holds that the plaintiff may bring a citizen enforcement action pursuant to § 326(a) to seek civil penalties for failure to comply with EPCRA's reporting provisions even though the plaintiff alleges no continuing violations at the time it commenced suit. Therefore, this Court must deny the defendant's motion to dismiss the Complaint for this Court's lack of subject matter jurisdiction.

### B. *Defendant's Alleged Continuing Violations*

Finally, and wholly separate from the issue of past EPCRA violations, in its opposition to the defendant's motion, the plaintiff contends that the defendant continues to violate § 313 *pendente lite*. Plaintiff's evidence of alleged continuing non-compliance stems from a Freedom of Information Act ("FOIA") request which Tebbutt sent to the EPA, on December 21, 1990, regarding Form Rs filed by the defendant. The alleged unreported information encompasses the 1987 and 1988 reporting years. According to the EPA response dated January 16, 1991, no 1987 and 1988 § 313 reports were "found" as of the date of the response.

However, the defendant has submitted the following material evidence to this Court which conclusively establishes that it is engaging in no continuing violations of § 313: 1) copies of Form Rs for the 1987 and 1988 reporting years submitted by the defendant and received by an EPA official, including the receipt date of July 30, 1990 stamped by the EPA; and 2) a letter dated February 11, 1991 from the Chief of the EPA Public Data Branch stating that the EPA is updating the plaintiff's FOIA request to reflect the 1987 and 1988 Form R submissions. (Meosky, and exhs. A & B thereto).

This evidence conclusively establishes to this Court that the defendant is not engaging in continuing violations of § 313.

### CONCLUSION

For the reasons set forth above, this Court denies the defendant's motion to dismiss the Complaint pursuant to Fed. R.Civ.P. 12(b)(1).

---

**5.** The Clean Water Act's venue provision states: "[a]ny action respecting a violation by a discharge of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located." § 505(c)(1).

**6.** By its own terms, the amendment does not take effect until 2 years after November 15, 1990. Pub.L. 101–549.