7 F.3d 191
 38 ERC 1035, 62 USLW 2295, 24 Envtl.
L. Rep. 20,005
 SINCLAIR OIL CORPORATION, Plaintiff-Appellee,
v.
James SCHERER, in his official capacity as Regional
Administrator of the United States Environmental Protection
Agency, Region VIII; Lee M. Thomas, in his official
capacity as Administrator of the United States Environmental
Protection Agency; United States Environmental Protection
Agency, Defendants-Appellants.
 No. 92-8042.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 7, 1993.
 
 Henry W. Ipsen of Holme Roberts & Owen, Denver, CO, and Stanley K. Hathaway of Hathaway, Speight, Kunz, Trautwein & Barrett, Cheyenne, WY, for plaintiff-appellee.
 Katherine W. Hazard, Dept. of Justice (Vicki A. O'Meara, Acting Asst. Atty. Gen., Edward J. Shawaker, and Jerel L. Ellington, Dept. of Justice, Stephen G. Pressman, and Larry Sperling, U.S. E.P.A., with her on the brief), Washington, DC, for defendants-appellants.
 Before BRORBY and McWILLIAMS, Circuit Judges, and BROWN,* Senior United States District Judge.
 BRORBY, Circuit Judge.
 
 
 1
 The sole question presented by this appeal is whether an administrative penalty action was previously settled in a prior consent decree between the parties. The trial court held the consent decree barred the administrative action. We reverse.
 
 Background
 
 2
 Sinclair Oil Corporation operated a petroleum refinery in central Wyoming, and in conjunction therewith, hazardous waste management units known as separator ponds. The ponds were closed under an Environmental Protection Agency (EPA) approved plan. Thereafter, EPA issued two orders relating to the refinery. The first order determined that waste migrating from the refinery endangered the health of nearby residents and directed Sinclair to undertake response measures. The second order covered the entire refinery and required Sinclair to mitigate potential threats from the release of waste. Sinclair sued EPA to enjoin enforcement. EPA, in turn, sued for enforcement. The lawsuits were consolidated and settled by entry of a consent decree.
 
 
 3
 The present dispute arises from the following facts. Sinclair hauled waste from the separator ponds in central Wyoming to a separate waste disposal facility in southern Wyoming. The disposal facility was also owned by Sinclair.
 
 
 4
 The federal Resource Conservation and Recovery Act[1] contains a land disposal restriction program. The regulations implementing this program require the generator of hazardous wastes to attach notices to shipments of hazardous wastes specifying the type of waste generated, and the appropriate treatment standard. 40 C.F.R. 268.7(a) (1992). EPA alleges Sinclair failed to attach notices to 156 shipments of waste in violation of this regulation. A separate regulation requires land disposal facilities receiving hazardous wastes to maintain copies of the notices. 40 C.F.R. 268.7(c)(1) (1992). EPA alleges Sinclair failed to maintain notices for 153 shipments of waste in violation of this regulation.[2] The district court found both parties knew of these facts prior to the execution and entry of the consent decree.
 
 
 5
 After entry of the consent decree, EPA charged hundreds of administrative penalty counts against Sinclair based upon these alleged land disposal violations. Sinclair believes these issues were resolved by the consent decree, whereas EPA believes to the contrary. The issue was brought to the trial court who agreed with Sinclair, and EPA appeals this decision.
 
 II.
 STANDARD OF REVIEW
 
 6
 The parties dispute the applicable standard of review. A consent decree is a negotiated agreement that is entered as a judgment of the court. See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986). Consent decrees, therefore, have characteristics both of contracts and of final judgments on the merits. Ho v. Martin Marietta Corp., 845 F.2d 545, 547 (5th Cir.1988).
 
 
 7
 The majority rule is, as with a contract, the interpretation of a consent decree is reviewed de novo. United States v. Western Elec. Co., 900 F.2d 283, 293 (D.C.Cir.) ("[w]e have repeatedly held that the construction of a consent decree ... is subject to de novo appellate review"), cert. denied, 498 U.S. 911, 111 S.Ct. 283, 112 L.Ed.2d 238 (1990); Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir.1989) (same); Navarro-Ayala v. Hernandez-Colon, 951 F.2d 1325, 1339 (1st Cir.1991) (no special deference where issue "involves determining the scope of the parties' original bargain," as set forth in consent decree); United States v. O'Rourke, 943 F.2d 180, 186 (2d Cir.1991) (de novo); Thompson v. Enomoto, 915 F.2d 1383, 1388 (9th Cir.1990) (same), cert. denied, --- U.S. ----, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992); Walker v. United States Dept. of Housing & Urban Dev., 912 F.2d 819, 825 (5th Cir.1990) (same); Stotts v. Memphis Fire Dept., 858 F.2d 289, 299 (6th Cir.1988) (same).
 
 
 8
 Appellate courts also recognize a variation of the standard rule of de novo review for consent decrees in instances where interpretation involves a fact-dependent legal standard, such as that mandated by Rule 11, or supervision of litigation, particularly in a public law context. Navarro-Ayala, 951 F.2d at 1337 (deference to trial court's decision appropriate where its decision stems from its long-term supervision of a remedial consent decree in a public law context) (citing Salve Regina College v. Russell, 499 U.S. 225, 232, 111 S.Ct. 1217, 1222, 113 L.Ed.2d 190 (1991) (noting "supervision of litigation" and "mixed questions of law and fact" remain areas where appellate deference may be given to trial court's decision of law)). In such infrequent circumstances, a trial court may be "better positioned" to decide the issue in question, therefore warranting deferential review. Salve Regina, 499 U.S. at 232, 111 S.Ct. at 1222.
 
 
 9
 In this circuit the law is somewhat unclear, but in the most recent case, In re Application of City & County of Denver, 935 F.2d 1143, 1147 (10th Cir.1991), this court gave deference to the reasonable interpretation of the district court in circumstances that warranted departure from independent review; the district court decision interpreted and enforced two overlapping consent decrees entered during the thirty-eight years it had presided over water rights litigation. C.f. Salve Regina, 499 U.S. at 233, 111 S.Ct. at 1222 (" 'especially common' for issues involving supervision of litigation to be reviewed for abuse of discretion").
 
 
 10
 Although some language in City & County of Denver could be read broadly to preclude de novo review, the analysis in that case does not address circumstances which do not establish the trial court is "better positioned" than the appellate court to decide an issue. We decline to read City & County of Denver more broadly than its analysis.
 
 
 11
 In this case, the issue for review involves the construction of the negotiated settlement based on the four corners of the consent decree. In such an inquiry, the reviewing court and the district court are equally able to construe the parties' agreement. Because this case involves none of the circumstances allowing a departure from independent appellate review of consent decrees, the standard is de novo.
 
 
 12
 The principles of construction of the consent decree are not disputed. "[A] consent decree or order is to be construed for enforcement purposes basically as a contract," United States v. ITT Continental Baking Co., 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975); the terms of the decree and the respective obligations of the parties must be found within the four corners of the consent decree, United States v. Armour & Co., 402 U.S. 673, 681-82, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971) ("[T]he decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve.... [T]he instrument must be construed as it is written" (emphasis in original)); and the contract law of the State of Wyoming is applicable. Air Line Stewards & Stewardesses Ass'n v. Trans World Airlines, Inc., 713 F.2d 319, 321 (7th Cir.1983).
 
 III.
 INTERPRETATION OF THE DECREE
 
 13
 The consent decree is lengthy, complex, and anything but a model of clarity. The parties have narrowed the dispute to three sections of the consent decree, each of which we address in turn.
 
 
 14
 A. Effect of Decree.
 
 
 15
 The consent decree contains a section entitled "Effect of Decree," the applicable portion of which reads as follows:
 
 
 16
 Entry of this Decree and compliance with and completion of the requirements contained herein shall constitute full settlement of the claims and the complaints filed by the parties in the consolidated cases and the violations alleged therein....
 
 
 17
 This section expressly extinguished those claims, and the violations alleged therein, which were raised by the parties in the consolidated lawsuits. The counts of the administrative penalty action involving the alleged failure to attach notices to each shipment of waste, and the failure to retain these notices at the disposal facility, are not mentioned anywhere in any of the pleadings filed in the consolidated case. Therefore, they are not part of "the claims and the complaints filed by the parties" or the "violations alleged therein" which were resolved by entry of the consent decree.
 
 
 18
 Similarly, Sinclair's request for injunctive relief from EPA's two cleanup orders does not implicitly include the presently alleged violations because it plainly dealt with the scope of Sinclair's remedial obligations at its Central Wyoming facility. It had nothing whatever to do with known, but not yet charged, alleged violations arising from Sinclair's transport and disposal of the separator pond wastes.
 
 
 19
 We disagree with the district court's holding that these presently alleged administrative charges were raised by a memorandum filed by EPA in an early phase of the litigation. The earlier memorandum concerned only Sinclair's failure to comply with a closure schedule, an issue that was resolved before entry of the decree. Because they are absent from the pleadings and allegations previously filed, the presently alleged violations, and any claims based upon them, are not included in this section of the consent decree.
 
 
 20
 B. Reservation of Rights.
 
 
 21
 The consent decree contains a section entitled "Reservation of Rights," the significant portion of which reads as follows:
 
 
 22
 B. ... EPA reserve[s] the right to commence administrative or judicial actions with respect to alleged violations of regulations promulgated under RCRA [Resource Conservation and Recovery Act] that address requirements to be met in transporting hazardous wastes ... from ... [the central Wyoming refinery].... Sinclair similarly reserves its right to assert all appropriate defenses against such alleged violation(s).
 
 
 23
 The ordinary meaning of the language employed in this section shows the parties agreed the presently alleged "violations of ... requirements to be met in transporting hazardous wastes" from the central Wyoming refinery to the southern Wyoming disposal facility were excluded from the consent decree. Any land disposal restriction violations resulting from the alleged failure to attach the proper notices to the shipments of waste are RCRA "requirements to be met in transporting" waste. Therefore, by the express agreement of the parties, they were not settled by the consent decree.
 
 
 24
 The district court rejected this plain interpretation because it found the "Reservation of Rights" was necessarily limited by what was elsewhere specifically resolved in the consent decree. We hold this finding in error because the counts pertaining to the alleged failure to attach notices to waste shipments were not otherwise specifically resolved in the decree. The "Statement of Purpose" section of the decree (quoted below) is much more general than this specific reservation of the right to bring charges "with respect to alleged violations of ... requirements to be met in transporting hazardous wastes." As a result, there is no merit to the argument that the expressly reserved rights were settled by the general statement of purpose.
 
 
 25
 However, the alleged violations pertaining to the failure to maintain notices at the disposal facility are not "requirements to be met" in transporting the pond waste. Therefore, the right to bring an action for such alleged failure to maintain notices was not specifically reserved in the above quoted section. Nevertheless, this does not end the inquiry. The pertinent portions of the "Reservation of Rights" section states:
 
 
 26
 A. Except as specifically provided ..., the United States does not waive any rights, including but not limited to the right ... to pursue any remedies available ... for any violation by Sinclair of federal or state laws, regulations or permit conditions. Except as specifically provided for herein, this Decree shall not be construed as a covenant not to sue, release, waiver or limitation of any rights ... which EPA has under RCRA....
 
 
 27
 Under the ordinary meaning of this language, the parties agreed the right to bring an action for the alleged violations of the requirement that Sinclair, as operator of a land disposal facility, maintain the shipping notices at its waste receiving facility, was not waived unless it was specifically dealt with elsewhere in the consent decree. Therefore, we turn to the third of the three disputed sections to determine if it was specifically provided for therein.
 
 
 28
 C. Pending Issues Regarding Closure.
 
 
 29
 The consent decree contains a section entitled "Statement of Purpose" which states that by agreeing to the decree, "it [was] the mutual objective of EPA and Sinclair to resolve all pending issues regarding closure ... of the [separator ponds] at [the central Wyoming refinery]."
 
 
 30
 The issue is whether this section resolved the alleged violations pertaining to the failure to maintain notices at the disposal facility. We conclude it is unnecessary to determine whether the notice maintenance counts were "issues regarding closure" because, under the ordinary meaning of the words, they were not "pending issues."
 
 
 31
 Assuming the term "pending" is taken in its broadest sense to mean "awaiting," the term "issues" nevertheless is modified by "pending" and requires, at a minimum, that a point of discussion, debate or dispute be engaged. Webster's II New Riverside University Dictionary 868-69 (1988). Although they were known to the parties, there is nothing in this record to show the alleged notice maintenance violations were, at any point in the consolidated lawsuits, even discussed, much less disputed. Because neither party to the consolidated cases raised the matter of the notice maintenance requirements, it was not an "issue" at the time of the consent decree, even if in the very broadest sense it was "pending."Sinclair could have bargained but did not, to specifically include in the decree all of the alleged violations of the RCRA that were known to the EPA on the date the consent decree was signed. We are mindful that a consent decree "embodies as much of" the parties' "opposing purposes as the respective parties have the bargaining power and skill to achieve." Armour, 402 U.S. at 681-82, 91 S.Ct. at 1757. We cannot rewrite their agreement to cover counts that were not raised in the consolidated suits they settled. Instead, "the instrument must be construed as it is written, and not as it might have been written had [a party] established [its] factual claims and legal theories in litigation." Id. at 682, 91 S.Ct. at 1757. Accordingly, we conclude that this statement of purpose did not resolve the counts alleging failure to maintain notices, or the counts alleging failure to attach notices to shipments.
 
 IV.
 CONCLUSION
 
 32
 The district court found that at the time they settled the consolidated cases, both parties knew of the existence of the facts underlying the counts which are now in dispute. It is equally apparent from the "Reservation of Rights" section of the consent decree that both litigants knew the entry of the consent decree was likely to be followed by another round of litigation. Nowhere in the consent decree are the present administrative penalty actions resolved. The lengthy and detailed provisions of the consent decree deal almost exclusively with the conduct of remedial action at the central Wyoming refinery and not with the transport and land disposal of the waste once it left the refinery.
 
 
 33
 Although the relief Sinclair "seeks may be in keeping with" its own purposes in agreeing to the consent decree, the relief is not "supported by the terms of the consent decree under which it is sought." Armour, 402 U.S. at 683, 91 S.Ct. at 1758. In this context, the suggestion the EPA may have acted in bad faith, which perhaps animated the district court's decision, is of diminished concern. The parties did not expressly resolve the presently alleged violations in the consent decree and we cannot rewrite their agreement to include additional matters.
 
 
 34
 The judgment of the district court is REVERSED. This case is REMANDED to the district court for such other and further proceedings, if any, as may be appropriate, consistent with this opinion.
 
 
 
 *
 The Honorable Wesley E. Brown, Senior United States District Judge, District of Kansas, sitting by designation
 
 
 [1]
 42 U.S.C. § 6901 through § 6982 (1984)
 
 
 [2]
 In addition to these 309 counts of alleged land disposal restrictions, the EPA's administrative complaint contained numerous other allegations of RCRA violations which are admittedly not covered by the consent decree