NEIGHBORS FOR A TOXIC FREE COMMUNITY; Community Coalition; Marjorie Culbert; Debra Gomez; Lorraine L. Granado; Sherrie Johnson; Robert Macias; Michael Maes; Janet Reasoner; and Michael Reis, Plaintiffs,

v.

VULCAN MATERIALS COMPANY d/b/a Vulcan Chemicals; and General American Transportation Corporation, Defendants.

No. 95–D–2617.

United States District Court, D. Colorado.

April 25, 1997.

Randall M. Weiner, Land & Water Fund of the Rockies, Boulder, CO, Richard V. Lopez, Boulder, CO, for Plaintiffs.

C. Michael Montgomery, Nada W. Culver, Montgomery, Kolodny, Amatuzio, Dusbabek & Parker, L.L.P., Denver, CO, William L. Bryant, Senior Environmental Attorney, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

### I. *INTRODUCTION*

THIS MATTER comes before the Court in connection with two pending motions; namely, Vulcan Material Company's ("Vulcan") motion to dismiss filed November 27, 1995, and the motion for summary judgment by General American Transportation Corporation ("GATC") and GATX Capital Corporation filed March 20, 1996. A hearing was held on these matters on December 4, 1996. By Order dated December 13, 1996, I dismissed all claims against GATX Capital Corporation pursuant to a Stipulated Motion to Dismiss. Thus, I address only those claims against Vulcan and GATC.

### II. *FACTUAL BACKGROUND*

This action is brought by a consumer group and others under the Emergency Planning and Right–to–Know Act ("EPCRA"), for failure to make required reporting relevant to the spill of a toxic chemical into the neighborhoods of the consumer group.[1] The toxic chemicals, muriatic and hydrochloric acid, were released on March

29, 1995, from a tank car leased by Vulcan from GATC. The spill necessitated the evacuation of 200 residents from north central Denver on the evening of March 29, 1995, and the acid was allegedly not neutralized until 10:00 p.m. on March 30, 1995.

Plaintiffs claim that defendants violated EPCRA by failing to provide immediate notice to the proper authorities, i.e., notice was not provided until 7:10 p.m., four and one-half hours after Vulcan discovered the spill. Further, plaintiffs assert that defendants violated EPCRA by failing to submit a followup emergency notice after the spill, i.e., defendants failed to report as soon as practicable on the chemical involved and the health risks associated with same.

On July 13 and 18, 1995, plaintiffs transmitted a 60 day notice-to-sue letter to defendants regarding the allegations of this suit. Up to that point, plaintiffs alleged that defendants had taken no steps to comply with this provision of EPCRA. On August 2, 1995, the Environmental Protection Agency ("EPA") served Vulcan with an administrative complaint asserting claims under Sections 103 and 109 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended, 42 U.S.C. § 9603 and 9609. Specifically, the complaint alleged violations of CERCLA arising from Vulcan's failure to immediately notify the National Response Center ("NRC") when the emergency started.

A consent agreement was later entered into between the EPA and Vulcan which "serve[d] as a full and fair settlement of all issues, claims and allegations relating to [Vulcan's] reporting requirements in connection with the release of hydrochloric acid raised in the Complaint." *Id.,* ¶ 24. The consent agreement further stated that "[b]ased on information available to Complainant on the effective date of this Consent Agreement, Complainant does not intend to seek civil penalties from Respondent for any potential reporting requirements under other environmental statutes in connection with the

---

1. EPCRA was passed into law as Title III of the Superfund Amendments and Reauthorization Act of 1986 (SARA), and is codified at 42 U.S.C. § 11001 *et seq.*

release of hydrochloric acid raised in the Complaint." *Id.*

Plaintiffs then commenced this action to force defendants to comply with EPCRA and to pay penalties for violations of the Act. It is undisputed that defendants were required to comply with EPCRA in connection with the toxic spill.

## III. *ANALYSIS*

### A. *Motion to Dismiss*

This motion seeks to dismiss plaintiffs' claims on two grounds: (1) that the consent agreement not only resolved the CERCLA claim filed by the EPA against Vulcan but also resolved the EPCRA claim since it released Vulcan from "all issues, claims and allegations relating to Respondents' reporting requirements in connection with the release of hydrochloric acid"; and (2) that Vulcan has filed all reports and resolved all potential violations thus mooting Plaintiff's claims.

Plaintiffs assert, among other things, that EPCRA only precludes suits by citizens where the EPA "has commenced and is diligently pursuing" an enforcement action "under *this* chapter [EPCRA]." 42 U.S.C. § 11046(e) (emphasis added). Since the EPA's action involved alleged violations of CERCLA, plaintiffs' suit is not barred, especially since CERCLA and EPCRA have different intents and purposes.[2] Further, the CERCLA action only concerned Vulcan's failure to immediately notify the NRC at the commencement of the emergency. This suit involves the alleged violation of the requirement under EPCRA of a specific post-accident, written explanation of what happened and what follow-up steps individuals should take to protect themselves. Finally, plaintiffs assert that the consent agreement specifically reserved the EPA's right to pursue Vulcan for violations of other statutes, such as EPCRA.

As to the argument that suit is barred because Vulcan subsequently complied with EPCRA three and one-half months after the acid spill, and almost two weeks after the

transmission of Plaintiffs right to notice-to-sue letter, Plaintiffs argue that Vulcan's argument is without merit because the vast majority of courts have ruled that citizens may sue to force companies to pay off statutory penalties for past EPCRA violations. Otherwise, this would effectively disable citizen enforcement suits since a chemical company could wait until the suit was filed to comply with the Act and then bar the suit.

My analysis of EPCRA reveals that its purpose is two-fold. First, "the 'Right–to–Know' component, aims to compile accurate, reliable information on the presence and release of toxic chemicals and to make that information available at a reasonably localized level." *Citizens for a Better Environment v. The Steel Co.*, 90 F.3d 1237, 1239 (7th Cir.1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 1079, 137 L.Ed.2d 214 (Feb. 24, 1997). The second "primary purpose of the Act,the 'Emergency Planning' component, is to use the reported information to formulate emergency response plans, again at the local level, in order to limit damage resulting from the accidental release of toxic chemicals." *Id.*

EPCRA "grants enforcement authority to ordinary citizens, who may sue in the federal district courts after giving 60 days notice to the alleged violator, the EPA and state authorities." *Id.* at 1240. This enforcement authority is found at 42 U.S.C. § 11046. The statute "includes specific information regarding who must file, where those filings must be submitted, and the timetable in which initial and subsequent filings must take place." *Id.* at 1240 (referring to 42 U.S.C. §§ 11022–23 (EPCRA §§ 312–13)).

As the Seventh Circuit further explained in *Citizens for a Better Environment:*

> [i]f, after receiving notice of a private citizen's right to sue, the EPA chooses to pursue a case, the proposed citizen suit is barred. If the EPA takes no action, citizens acting as 'private attorney generals' may seek declaratory and injunctive relief and civil penalties. Civil penalties assessed against a violator in a citizen suit are not paid to the plaintiff; they are paid

---

**2.** For example, plaintiffs assert that EPCRA, unlike CERCLA, is intended to benefit the plaintiffs

and other residents of their shared community from hazards associated with toxic spills.

into the U.S. Treasury. The court may in its discretion award the costs of litigation to the prevailing or substantially prevailing party.

*Id.* at 1241. The civil penalties range from $200 to $25,000 per violation, depending on statutorily mandated factors, and "[e]very day that a facility fails to comply with the requirements of these sections" and/or "failure to report to each person or organization designated under the EPCRA" constitutes a separate violation. *Id.*

### 1. *Whether the Consent Agreements Bars This Suit*

■ The first issue in this motion, whether the administrative complaint and subsequent consent agreement bars this suit, appears to be an issue of first impression. As noted above, EPCRA precludes suits by citizens where the EPA "has commenced and is diligently pursuing" an enforcement action "under this chapter." 42 U.S.C. § 11046(e). However, I have found no cases addressing EPCRA's provision allowing citizen suits in situations such as this one where suit was brought by the government under CERCLA and a citizen suit was brought under EPCRA, a different statute, involving different violations arising from the same toxic spill. It is clear that the EPA's complaint alleged only violations of CERCLA; however, it did contain a passing reference to EPCRA.

Vulcan relies on cases where courts construing other environmental statutes have ruled that citizen suits are barred where the EPA has commenced proceedings under comparable statutes. *Sierra Club v. Colorado Refining Co.,* 838 F.Supp. 1428, 1434–36 (D.Colo.1993) (court held that citizen suit under the Federal Clean Water Act was barred when the EPA had filed an action and entered into a consent decree for violations of the Colorado Water Quality Control Act because the two acts were comparable in their purposes and penalties) (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 382–83, 98 L.Ed.2d 306 (1987)); *North and South Rivers Watershed Ass'n Inc. v. Town of Scituate,* 949 F.2d 552 (1st Cir.1991) (court held that suit by citizens under the Federal Clean Water Act was barred where a state administrative order was issued under the state Clean Waters Act since the state was already acting to correct the violations upon which the citizens focused their action); *Supporters to Oppose Pollution, Inc. v. The Heritage Group,* 973 F.2d 1320 (7th Cir.1992) (citizen's suit under RCRA barred when EPA diligently prosecuting same claims).

On the other hand, plaintiffs rely on *Sinclair Oil Corp. v. Scherer,* 7 F.3d 191 (10th Cir.1993), where the Tenth Circuit found that the EPA was not barred from pursuing penalties associated with a refinery's failure to attach required notices to shipments of hazardous waste and to maintain copies of such notices even though the EPA had entered into a consent decree which settled "the claims and complaints filed by the parties in the consolidated cases and the violations alleged therein" because the new violations for which penalties were sought were never referenced in the complaint. The Tenth Circuit noted that "the terms of the decree and the respective obligations of the parties must be found within the four corners of the consent decree." *Id.* at 194. Further, the EPA "reserve[d] the right to commence administrative or judicial actions with respect to alleged violations of regulations promulgated under RCRA ... that address requirements to be met in transporting hazardous wastes." *Id.* at 194. Finally, the Tenth Circuit noted that "Sinclair could have bargained but did not, to specifically include in the decree all of the alleged violations of the RCRA that were known to the EPA on the date the consent decree was signed." *Id.* at 196.

I find that the reasoning of *Sinclair* is persuasive. The consent agreement in this case settled only "issues, claims, and allegations relating to Respondents' reporting requirements in connection with the release of hydrochloric acid raised in the *Complaint*" (emphasis added). Since the alleged violation of the reporting requirement asserted by the plaintiffs under EPCRA was not referenced in the complaint, I find that this claim was not encompassed within the four corners of the consent agreement. Clearly, Vulcan could have bargained for the decree to specifically include alleged violations of EPCRA

which violations were or should have been known to Vulcan as of the date the consent decree was signed. I further do not read the language in the consent agreement that the EPA does not intend to sue for other environmental statutes to foreclose citizen suits as to such claims. Indeed, EPCRA specifically allows citizens to sue for violations of EPCRA that the EPA has chosen not to pursue.

Finally, the cases relied on by defendants are distinguishable since they relied on different statutes and the citizen suits involved either the same statute or the federal version of the same state statute. Also, unlike the rulings in those cases, I find that EPCRA and the specific EPCRA violations alleged in this suit serve an entirely different purpose than CERCLA and the CERCLA claim asserted by the EPA. CERCLA addresses clean up of toxic spills. In that regard, the EPA's CERCLA claim involved the failure to immediately alert the NRC so that it could provide assistance with the spill. EPCRA, on the other hand, involves the violator's reporting and notice of spills so that the community at the local level is prepared and knowledgeable about the spill. In that regard, this suit involves the violation of the requirement that the facility owner where the spill occurred provide a specific post-accident, written explanation of what happened so that individuals affected by the spill will know what steps to take to protect themselves.

### 2. Whether Vulcan's Cure of the Violations Bars This Suit

■ As to the second argument of Vulcan, that plaintiffs are barred from suing for purely historical violations of EPCRA which have subsequently been cured by Vulcan, the cases are split on this issue. The Sixth Circuit in *Atlantic States Legal Found., Inc. v. United Musical Instruments, U.S.A., Inc.,* 61 F.3d 473 (6th Cir.1995), found that historical violations under EPCRA are barred if they have been cured by commencement of the suit. The primary basis of this ruling was that allowing such suits would render

the 60 day notice-to-sue requirement void since the notice is designed to allow the alleged violator to cure the action. *Id.* at 476–77. The Sixth Circuit relied on *Gwaltney* which reached the same result as to a different statute, the Clean Water Act.

On the other hand, a number of courts, the most significant of which is the Seventh Circuit, have ruled in favor of Plaintiffs, i.e., that citizen suits for historical violations are not barred even if the offender has cured the violations by the commencement of suit. I find that the Seventh Circuit's opinion in *Citizens for a Better Environment,* 90 F.3d at 1242–45, is particularly well reasoned, which directly rejects the holding of *United Musical Instruments.* In that case, the Seventh Circuit distinguished *Gwaltney* and held as follows:

> If the interpretation advanced by the Sixth Circuit and adopted by the district court is correct, citizen suits could only proceed when a violator receives notice of intent to sue and still fails to spend the minimal effort required to fill out the forms and turn them in. This would largely shift the cost of EPCRA compliance from regulated industrial users to private citizens. Private citizens would have to absorb much of the cost of monitoring chemical use and keeping up to date on changes in EPCRA requirements, with little or no hope of recovering those costs through awards of ligation expenses. Private enforcement of the reporting requirements would undoubtedly drop off. This scenario is impossible to reconcile with the clearly expressed intent of Congress, or with the very existence of the citizen enforcement provision.

*Id.* at 1244–45. Further, the Seventh Circuit reasoned that this result does not render the notice provision of EPCRA gratuitous. *Id.* at 1244.

I believe that this is the better reasoned authority and adopt this reasoning herein.[3] Thus, I find that Vulcan's cure of the violations before suit was commenced does not bar this suit. *Id.; see also Atlantic States*

---

**3.** I recognize that the Supreme Court has granted the petition for writ of certiorari in this case. However, since the Supreme Court has not ruled

on this issue, *Citizens for a Better Environment* remains good law upon which I can rely.

*Legal Foundation v. Whiting Roll–Up Door Mfg. Corp.,* 772 F.Supp. 745, 753 (W.D.N.Y. 1991); *Williams v. Leybold Technologies,* 784 F.Supp. 765, 768 (N.D.Cal.1992); *Delaware Valley Toxics Coalition v. Kurz–Hastings,* 813 F.Supp. 1132, 1141 (E.D.Pa.1993); *Idaho Sporting Congress v. Computrol, Inc.,* 952 F.Supp. 690 (D.Idaho 1996); *Don't Waste Arizona, Inc. v. McLane Foods, Inc.,* 950 F.Supp. 972 (D.Ariz.1997).

Accordingly, for the reasons stated above, Vulcan's motion to dismiss is DENIED.

### B. *Motion for Summary Judgment*

■ GATC asserts that it should be granted summary judgment because it was not the owner or operator of the facility where the spill occurred; instead, it owned only the tank car from which the spill occurred. As the owner of the tank car, which GATC argues is "rolling stock" as defined under the Act, GATC is not subject to EPCRA except for notification of transportation-related releases under Section 304. 42 U.S.C. § 11049(4). GATC asserts that the preamble to the EPA regulations states that EPCRA imposes a less burdensome notice requirement on transportation-related entities, noting that "transportation operators on the road very well may not know the telephone numbers of the relevant state and local entities." 52 Fed. Reg. at 13386 (4/22/87). This is consistent with public policy since the owner of rolling stock does not even know that the incident is occurring unless it receives some communication about it. Further, it does not control the commodities shipped, has no expertise with respect to their handling, is not on the scene and is thus not in a position to give any type of detailed notice about what is occurring.

Thus, GATC argues that its only obligation under Section 304 is for it to have made a report "by dialing 911, or in the absence of a 911 emergency telephone number, calling the operator" to report the release. 42 U.S.C. § 11004(b). GATC asserts that after it found out about the spill, it was informed that Vulcan, the operator, made the emergency call, and that Plaintiffs concede that the emergency call was made. Thus, summary judgment is appropriate.

In the alternative, GATC asserts that the release of chemicals was not a "transportation-related release", but occurred at a stationary facility; namely, Vulcan's terminal located at 2655 East 52nd Avenue. This is consistent with the broad definition of a "facility" under EPCRA. 42 U.S.C. § 11047. If so, GATC is also not an "owner" or "operator" and summary judgment is appropriate.

In response, Plaintiffs assert that GATC is culpable, along with Vulcan, for failing to provide a followup emergency notice under Section 304. It is undisputed that GATC owned the tank car from which the chemicals were released and that the tank car was not at Vulcan's terminal, but was parked in the open. Further, GATC was responsible by contract for providing and maintaining the tank car in good working order. The "rolling stock" provision that GATC relies on applies only during transportation or "where a stored substance is moving under active shipping papers and has not reached its ultimate consignee." 40 C.F.R. § 355.40(b)(4)(ii). Since the spill occurred after the tank car had been uncoupled, GATC cannot rely on EPCRA's relaxed requirement for transportation-related releases. Moreover, public policy favors holding owners fully accountable under EPCRA, and Section 304 of EPCRA applies to the "owner or operator." Congress and the EPA have illustrated in the Preamble to EPCRA that where no release notification is provided, owner and operator are jointly responsible. EPCRA Rules Preamble, 52 Fed. Reg. 13383 (1987). This is the same regime that is employed by CERCLA which imposes strict liability on responsible parties, including owners "regardless of their degree of participation." *U.S. v. Hardage,* 982 F.2d 1436, 1443 (10th Cir.1992). Finally, Plaintiffs deny that a call was made to 911 by Vulcan.

I agree with GATC that Plaintiffs' own exhibit (Exh. B to Response) shows that a 911 call was made by Vulcan. Further, Plaintiffs appear to concede that if the release at the Vulcan Transfer facility is a transportation-related release, than summary judgment is appropriate. EPCRA defines a transportation-related release as one which involves "transportation of a substance sub-

**1454**

ject to the requirements of this section, or storage incident to such transportation." 42 U.S.C. § 11004(b)(1). This regulation does not appear to be applicable to GATC because it was not the carrier or in control of the tank car or the Vulcan plant. Further, since the tank car was no longer in transport, the tank car is located in Vulcan's facility. The definition of facility includes "all buildings, equipment, structures, and other stationary items which are located on a site and which are owned or operated by the same person." 42 U.S.C. § 110047. Finally, Section 304, referring to CERCLA Section 103, requires only that the person "in charge" of a facility provide notification. Since GATC was not in charge and had no knowledge, notification by GATC was not required. Similarly, the public policy reasons that Plaintiffs allege are contradicted by the EPA which states that "neither 'section 103 of CERCLA' or 'section 304 of EPCRA' impose separate monitoring or testing requirements on facility owners or operators." 52 Fed. Reg. at 13385 (4/22/87). Finally, I do not find Plaintiff's interpretation of the statute and regulations to be reasonable since it would require any lessor of any type of equipment to file a full EPCRA report when a toxic spill occurs, even when the lessor has no knowledge or ability to do this.

Accordingly, for the reasons stated above, summary judgment is GRANTED as to General American Transportation Company.

## IV. CONCLUSION

After review of Vulcan Material's Company motion to dismiss and General American Transportation Company's motion for summary judgment, it is

ORDERED that Vulcan Material Company's motion to dismiss is DENIED. It is

FURTHER ORDERED that summary judgment is GRANTED as to Defendant General American Transportation Company. It is

FURTHER ORDERED that GATX Capital Company's motion for summary judgment is DENIED AS MOOT since this Defendant was dismissed from this case.