SHORES, Justice.
This appeal and cross appeal concern the development of Lot 10 of Russell’s Subdivision on Romar Beach in Baldwin County. Four Seasons of Romar Beach Condominium Owners’ Association, Inc., sought a declaratory judgment and an injunction that would prohibit Dewitt Apparel, Inc., and others from any development of Lot 10.
Four Seasons of Romar Beach, a condominium, was established on April 24, 1987, with the filing of its declaration of condominium. The Pier Corporation, with John Howard as the principal, was the developer of the project. The project was financed by First Guaranty Bank for Savings, which was later taken over by the Resolution Trust Corporation (“RTC”). The Pier Corporation intended to develop the Four Seasons project in two phases. Phase I of the project consisted of the construction of a 9-story condominium tower that included 35 units, built on lots 7, 8, and 9 of Russell’s Subdivision, and amenities consisting of a pool and a pier that extended into the Gulf. Phase I was completed.
On May 26, 1989, the owners voted on whether to amend the declaration of condominium in order to build Phase II, a second 9-story tower, with 36 units. The declaration was also amended to give Pier Corporation the option to acquire and develop Lot 10, located to the east of the condominium property. To induce the condominium unit owners to vote for the amendments, John Howard drew up development plans for Lot 10. His plan consisted of a 3-story, 6-unit structure, set back on Lot 10 so as to allow units in Phase II to maintain their waterfront *742 view. This plan became known as the “Howard Plan.”
On July 23, 1989, J.D. “Butch” Shivers III and his wife Helen Shivers, acting individually, as owners of a unit in Phase I of Four Seasons, filed a lawsuit in the Baldwin County Circuit Court against Pier Corporation, First Guaranty Bank, and Four Seasons of Romar Beach Condominium Owners’ Association, Inc., seeking to enjoin the proposed construction on Lot 10. That litigation was removed to the United States District Court for the Southern District of Alabama, when the RTC took over First Guaranty Bank. A settlement was negotiated in the case and the court accepted a “joint stipulation for entry of consent order” on May 13, 1991. Paragraph 2 of the consent order read:
“2. Pier and RTC do hereby agree that neither entity shall themselves develop any aspect of Lot 10 of Russell’s Subdivision, a more specific description of said property being attached hereto as Exhibit ‘B’, and identified therein as Parcel II.”
Under the consent order, the Four Seasons Condominium Owners’ Association had a first right of refusal to purchase Lot 10. The board of directors of the Association proposed the purchase of Lot 10 in accordance with the consent order, but the proposal was rejected by the owners. The consent order also providéd that if the Association did.not exercise its right of first refusal, then the Shiverses would have that right. The Shiverses also chose not to exercise their right of first refusal. Instead, after both rights of refusal had expired, the RTC held an auction on May 25, 1992, to sell the notes and mortgages it held related to Lot 10. At that auction, Dewitt Apparel, Inc., a corporation wholly owned by the Shiverses, bought those notes and mortgages.
Dewitt Apparel then sought to develop Lot 10 within Four Seasons, under a plan known as the “Parsons Plan,” which proposed a six-story ultra-luxury structure set seaward of the two Four Seasons towers. Dewitt attempted to negotiate with the Association in an effort to develop Lot 10. However, its attempts were not successful.
Dewitt Apparel foreclosed on the mortgages it had purchased from the RTC related to Lot 10. The Shiverses negotiated with Pier Corporation a “release and covenant not to sue,” under which Pier conveyed to Dewitt any rights it had in Lot 10 by a “blanket conveyance” and a deed in lieu of foreclosure. The “blanket conveyance” and deed were filed March 11, 1993. Dewitt Apparel claimed that as a result of the foreclosure, it, not Four Seasons Condominium, owned Lot 10, including the parking lot and “jutout.”[1]
On July 15, 1993, the Association sued Dewitt Apparel and the Shiverses in the Baldwin County Circuit Court, seeking declaratory and injunctive relief. It sought a judgment declaring that the consent order of the United States District Court prohibited the defendants from “developing any aspect of Lot 10” and sought a permanent injunction against any development of Lot 10.
On March 2, 1994, Dewitt Apparel filed a counterclaim in which it claimed that under paragraphs ll(a)-(d) of the Four Seasons declaration of condominium, as amended by the first amendment, the developer has the right to expand the condominium by adding additional land and improvements thereto. Dewitt claimed to have acquired all rights of the developer, Pier Corporation, under the Condominium Act, the declaration, the bylaws, the articles, and any related rights pursuant to paragraph 11 of the declaration, to expand Four Seasons. Dewitt asked the court to declare that it had started construction sufficient to satisfy the provisions of paragraph 11(b) of the declaration of condominium and to declare the Association to be equitably estopped from relying on the provisions of paragraph 11(b) of the declaration of condominium.
After five days of trial testimony, the court ruled that Dewitt Apparel owned Lot 10, and that it could develop it; however, under the trial court’s order, Dewitt Apparel may not develop Lot 10 outside of the Four Seasons of Romar Beach Condominium. The order submitted both the Howard Plan and the Parsons Plan for a vote of the Condominium Owners’ Association:
*743 “Upon consideration of the evidence admitted at trial, the arguments of counsel and the post-trial briefs, the Court hereby orders as follows:
“1. The defendants may build additional condominium units on Lot 10, Russell’s Subdivision, Map Book 3, page 115, by rights as part of the condominium named Four Seasons of Romar Beach Condominium pursuant to the Declaration of Condominium and attached documents now of record in the Baldwin County Probate Court commencing with Mise. Book 59, page 1384, et seq. and amendments thereto now of record. The defendants may not build said condominiums on Lot 10 outside and separate from the condominium property except by written agreement with the plaintiff.
“2. The plaintiff shall submit for a vote of the Association (i) the plans drawn by Gene Parsons, AIA (Exhibit P-14), the Howard Plans (Exhibit P-12) and any reasonable modifications of either of these plans. The plaintiff and the defendants shall have equal opportunity to promote or lobby any such plans. The Association shall call a special meeting and vote on such plans as submitted in accordance with the Declaration and Bylaws. The vote shall be taken at the earliest date allowable in accordance with the condominium documents. If the Association fails or refuses to approve a plan for said development on Lot 10, then the Court will decide on the plan without any additional testimony or argument for which purpose the Court hereby retains jurisdiction.
“3. The Court finds that the seven-year limitation on expanding the condominium set forth in paragraph 11(b) of the Declaration was tolled by this lawsuit. The defendants shall have one year to commence construction of the approved plan. The time to commence construction shall not begin to run against the defendants until the later of (i) the expiration of the time for appeal from this Court’s final order and any amendment thereto, or (ii) if an appeal is taken, from the date of a final order thereon.
“4. The parking lot easement and ‘jut-out’ which were described in the Second Amendment to the Declaration, Mise. Book 64, page 1402, have been eliminated by the foreclosure of the Second Mortgage as described in that certain Foreclosure Deed now on record in Real Property Book 0550, page 0024.
“5. Although the Court retains jurisdiction in this case for the reason aforesaid, the order entered herein is intended to be a final judgment for appellate purposes.
“Done at Bay Minette, Alabama on this the 7th day of October, 1994.”
Both parties appeal. The Association contends that the consent order of the United States District Court in the original case should be read to prohibit any development of Lot 10. The Association contends that the Shiverses, having successfully blocked the development of Lot 10 by the Pier Corporation, and then having acquired Lot 10 from the Pier Corporation, should not now be allowed to develop Lot 10. The Association appeals also from the trial court’s holding that Dewitt Apparel’s foreclosure of the second mortgage extinguished any interests that Four Seasons had in the parking lot and “jutout” on Lot 10.
Dewitt Apparel cross appeals, contending that the trial court erred in ruling that it must develop Lot 10 only as part of the Four Seasons Condominium. It argues that it should be allowed to develop Lot 10 subject only to the local laws and regulations applicable to any development. Dewitt Apparel contends that in requiring it to develop Lot 10 as part of Four Seasons Condominium and only according to a plan approved by the Association, the trial court is interfering with Dewitt Apparel’s use and enjoyment of its property. Dewitt Apparel urges this Court to affirm the trial court’s holding that its foreclosure of the second mortgage extinguished any interests that Four Seasons Condominium had in the parking lot and “jutout.”
*744 We first consider whether the trial court erred in construing the language of the consent order so as to restrict Dewitt Apparel to developing Lot 10 only as a part of the Four Seasons Condominium and only according to a plan approved by the Association.
For purposes of construction, a consent order is to be construed like a contract. Hanson v. Hearn, 521 So.2d 953 (Ala.1988). The legal effect of judgments or orders should be determined in the light of the literal meaning of the language used. Where that language is not ambiguous, it must be given its usual and ordinary meaning. Moore v. Graham, 590 So.2d 293 (Ala.Civ.App.1991). The consent order provided that neither Pier Corporation nor the RTC “themselves” could develop Lot 10. It mentions no other parties, nor does it limit in any way the rights of others. The trial court’s holding that Dewitt Apparel can develop Lot 10 as a part of Four Seasons Condominium implies a finding by the trial judge that the literal meaning of the consent order restricted development only by pier Corporation and the RTC.
If the trial judge had found ambiguity in the consent order, there was substantial evidence before the trial court that the consent order applied only to development of Lot 10 by Pier Corporation or the RTC. Jim Roach, former president of the Association, testified that his understanding of the consent order was that Lot 10 could be developed outside of Four Seasons Condominium by anybody willing to comply with applicable zoning orders and building codes. The attorney for Pier Corporation, Ray G. Riley, Jr., testified that the consent order did not provide any limitation on anyone developing Lot 10 outside of Four Seasons Condominium other than Pier Corporation itself and the RTC.
The trial Court construed the consent order as allowing Dewitt Apparel to develop Lot 10, but limited this development to being within Four Seasons Condominium. Having made a finding of fact that Dewitt Apparel was not restricted from developing Lot 10, the court had no basis for restricting the development to being within Four Seasons Condominium. Included in the assets of Pier Corporation that Dewitt Apparel acquired by purchase and foreclosure was the first amendment to the Four Seasons declaration of condominium, which allowed the Pier Corporation to acquire and develop Lot 10 as a part of Four Seasons. Although Dewitt Apparel thus acquired the right to develop Lot 10 as part of Four Seasons, as a new developer that was not a party to the consent order it was not limited to developing Lot 10 in that manner. This Court has held that a property owner who complies with all applicable ordinances and regulations may not be denied a legal use of the land merely because adjoining landowners object to that use. Smith v. City of Mobile, 374 So.2d 305 (Ala.1979); Ex parte Frazer, 587 So.2d 330 (Ala.1991).
The record reflects that under the consent order the Four Seasons Condominium owners had a right of first refusal to purchase Lot 10. The owners chose not to exercise that right. When they failed to purchase the lot, this left the way open for another developer to acquire the rights to Lot 10. Dewitt Apparel became the new developer/owner when it foreclosed on the mortgages and received a deed in lieu of foreclosure from Pier Corporation. Thus, the trial court erred in holding that Dewitt Apparel may develop Lot 10 only as a part of the Four Seasons Condominium and only according to a plan approved by the Association; that part of the judgment so holding is reversed.
We next consider whether the trial court erred in ruling that the foreclosure of the second mortgage by Dewitt Apparel eliminated Four Seasons Condominium’s interest in the parking lot and “jutout” on Lot 10. The property described as the parking lot and the “jutout” were dedicated to the condominium in the second amendment to the declaration of condominium, as part of Phase II of the development of the project. This dedication was subject to the First Guaranty mortgage, which was acquired by Dewitt Apparel from the RTC. The foreclosure of this second mortgage placed all right and title in Dewitt Apparel. Bailey Mtg. Co. v. Gobble-Fite Lumber Co., 565 So.2d 138 (Ala.1990). Thus, this portion of the judgment of the trial court is due to be affirmed.
*745 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, KENNEDY, and COOK, JJ., concur.

. The "jutout” is a small sliver of land on the west line of the southern half of Lot 10.