740 A.2d 1004

**Oliver JONES et al.**

v.

**Selbe HUBBARD.**

**No. 25, Sept. Term, 1999.**

Court of Appeals of Maryland.

Nov. 16, 1999.

**514**

516

Elise Davis, Easton, for petitioners.

Stephen Z. Meehan (David C. Wright of Wright & Meehan, on brief), Chestertown, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

CATHELL, Judge.

On November 8, 1994, petitioners agreed to sell the property described as 10693 Chesterfield Forest Road, Millington, Maryland to respondent for $100,000.00. On March 7, 1996, respondent filed an action against petitioners in the Circuit Court for Kent County to recover for breach of contract arising out of that real estate transaction. The case came before the circuit court for a hearing on the merits on February 13, 1997. Prior to trial that day, the trial judge rendered a judgment pursuant to the parties' consent in favor of respondent in the amount of $5,000.00 with a proviso that it could be settled upon the payment of $2,550.00 within thirty days. The judgment was indexed and recorded.

**518** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The thirtieth day fell on Saturday, March 15, 1997. In a handwritten memo dated March 10, 1997, petitioners advised respondent that they would pay the judgment on Monday, March 17, 1997 with a cashier's check. On March 17, the thirty-second day, petitioners presented respondent with a cashier's check for $2,500.00 and $50.00 cash and requested that respondent mark the judgment "released and satisfied." Respondent refused to file an Order of Satisfaction arguing that the $2,550.00 should have been paid by March 15, 1997, even though that day was a Saturday.

On April 3, 1997, respondent filed a Petition for Deposition in Aid of Enforcement of Judgment. Petitioners filed an answer to that petition on April 8, 1997, and filed a Motion for Injunction, claiming that they had effectively paid within the thirty-day requirement because, pursuant to Maryland Code (1957, 1995 Repl.Vol.), Article 94, section 2 and Maryland Rule 1–203(a), they had until March 17, 1997, to satisfy the judgment at the discounted rate. The circuit court denied this motion and on May 5, 1997, petitioners filed a Motion to Amend or Revise the Judgment, which was also denied.

The Court of Special Appeals affirmed the circuit court, holding that the discount provision did not constitute a court order. We granted a writ of certiorari to consider whether the trial court properly ruled that the parties' agreement to discount a judgment for payment within thirty days was not governed by Maryland Code (1957, 1998 Repl.Vol.), Article 1, section 36 [1] and Maryland Rule 1–203(a), and the due date for payment, therefore, was not extended by virtue of falling on a Saturday. We hold that the trial court erred, that the agreement to discount the judgment was a court order governed by Maryland Rules 1–203(a) and 1–202(n), and the due date for payment was extended by virtue of falling on a Saturday.

---

1. The petition for certiorari referred to Article 94, section 2, which was recodified as Article 1, section 36 in 1997. No substantive changes were made in the transfer. *See 1997 Md. Laws, Chap. 31, § 6.* Hereinafter, we will refer to the current statute, Article 1, section 36, and statutory references will be to section 36, unless otherwise indicated.

Accordingly, we reverse. We shall not reach the applicability of Article 1, section 36.

## I. Discussion and Analysis

The threshold issue is whether the discount provision was a court order governed by the relevant provisions. To make this determination, we need to analyze three distinct questions of law: (1) whether the trial court rendered a final judgment; (2) if a final judgment was rendered, whether it included the discount provision; and (3), if a final judgment, which included the discount provision, was rendered, whether and how Maryland Rule 1–203(a) would affect the due date for payment of the judgment.

### A. Consent Judgments

There are two rules of court which are determinative as to whether the trial court rendered a judgment in this particular case. Maryland Rule 1–202(n) defines judgment as "any order of court final in its nature entered pursuant to these rules." Accordingly, a judgment is an order of court. Additionally, at the time this judgment was rendered, Maryland Rule 2–601 (1997)[2] prescribed the manner in which a judgment must be entered as follows:

(a) **When Entered.**—Upon a general verdict of a jury or upon a decision by the court allowing recovery only of costs or a specified amount of money or denying all relief, the clerk shall forthwith enter the judgment, unless the court orders otherwise. Upon a special verdict of a jury or upon a decision by the court granting other relief, the clerk shall enter the judgment as directed by the court. Unless the court orders otherwise, entry of the judgment shall not be delayed pending a determination of the amount of costs.

---

**2.** Effective October 1, 1997, this Court amended Maryland Rule 2–601, requiring that each judgment be set forth on a separate document and that the court clerk prepare, sign, and enter the judgment. Prior wording required that the clerk only enter the judgment. The judgment in the case *sub judice* was rendered on February 13, 1997; therefore, the current version of Maryland Rule 2–601 was not controlling.

**(b) Method of Entry—Date of Judgment.**—The clerk shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of the judgment.

**(c) Recording and Indexing.**—Promptly after entry, the clerk shall record and index the judgment, except a judgment denying all relief without costs, in the judgment records of the court.

This Court has previously interpreted the interplay between these two rules as follows:

Read in conjunction, Rule 1–202(m) [3] and Rule 2–601 [4] make clear that two acts must occur for an action by a court to be deemed the granting of a judgment: the court must render a final order and the order must be entered on the docket by the clerk. These two required acts—*rendition* of a judgment by the court and *entry* of the judgment by the clerk—are discrete occurrences. Rendition of judgment is the judicial act by which the court settles and declares the decision of the law on the matters at issue. In other words, rendition is the court's pronouncement, by spoken word in open court or by written order filed with the clerk, of its decision upon the matter submitted to it for adjudication. The second act required under Maryland law—the clerk's entry of the judgment on the docket—is the purely ministerial act by means of which permanent evidence of the judicial act of rendering the judgment is made a record of the court. *See Doehring v. Wagner,* 311 Md. 272, 533 A.2d 1300 (1987); *Corey v. Carback,* 201 Md. 389, 94 A.2d 629 (1953).

---

**3.** In 1996, Maryland Rule 1–202(m) was redesignated as current Rule 1–202(n).

**4.** We continue to refer to the version of Maryland Rule 2–601 effective on February 13, 1997. We do not address the issue of whether the current version of Maryland Rule 2–601 can be interpreted similarly.

A judgment is therefore not granted until it is both properly rendered and properly entered.

*Davis v. Davis,* 335 Md. 699, 710, 646 A.2d 365, 370 (1994); *see also Claibourne v. Willis,* 347 Md. 684, 690, 702 A.2d 293, 296 (1997); *Board of Liquor License Comm'rs v. Fells Point Cafe, Inc.,* 344 Md. 120, 127–28, 685 A.2d 772, 775 (1996). In the case *sub judice,* both of these requirements were met when the court rendered a consent judgment in favor of respondent and the clerk recorded the judgment on the docket and indexed it.

■ "*'Rendition* of judgment is ... the court's pronouncement, by spoken word in open court or by written order filed with the clerk, of its decision upon the matter submitted to it for adjudication.'" *Fells Point Cafe,* 344 Md. at 128, 685 A.2d at 775 (quoting *Davis,* 335 Md. at 710, 646 A.2d at 370). In *Parkington Apartments, Inc. v. Cordish,* 296 Md. 143, 149, 460 A.2d 52, 55 (1983), this Court said:

> *Black's Law Dictionary* 1165 (5th ed.1979) [5] is instructive as to what the General Assembly may have contemplated when it used the term "rendition of judgment":

> "Rendition of a judgment is effected when trial court in open court declares the decision of the law upon the matters at issue, and it is distinguishable from 'entry of judgment,' which is a purely ministerial act by which the judgment is made of record and preserved. *Ex parte Gnesoulis,* Tex.Civ.App., 525 S.W.2d 205, 209 [ (1975) ]. A judgment is rendered as of date on which trial judge declares in open court his decision on matters submitted to him for adjudication, and oral pronouncement by the court of its decision is sufficient for 'rendition of judgment'. *Farr v. McKinzie,* Tex.Civ.App., 477 S.W.2d 672, 676 [ (1972) ].

---

5. This definition remains substantially the same in *Black's Law Dictionary* 1296 (6th ed.1990). The current version, *Black's Law Dictionary* 1299 (7th ed.1999), defines "rendition of judgment" simply as "[t]he judge's oral or written ruling containing the judgment entered."

"The rendition of judgment is the pronouncement of the court of its conclusions and decision upon the matter submitted to it for adjudication; a judgment may be rendered either orally in open court or by memorandum filed with the clerk. *Travelers Express Co., Inc. v. Winters*, Tex.Civ.App. 488 S.W.2d 890, 892 [ (1972), *overturned on other grounds by Reese v. Piperi*, 534 S.W.2d 329 (Tex.1976) ]. 'Rendition' of judgment is distinguishable from its 'entry' in the records. *Rehm v. Fishman*, Mo.App., 395 S.W.2d 251, 255 [ (1965) ]. See **Entering judgment.**"

Several courts in other jurisdictions define "rendition of judgment" consistent with this interpretation. *Interstate Power Co. v. Kansas City Power & Light Co.*, 909 F.Supp. 1224, 1238 (N.D.Iowa 1991) ("[A] judgment is rendered 'when it is announced, or when the judge signs an enrolled judgment order . . . .' ") (quoting *World Teacher Seminar v. Iowa Dist. Ct.*, 406 N.W.2d 173, 177 (Iowa 1987)); *Gorum v. Samuel*, 274 Ala. 690, 151 So.2d 393, 396 (1963) (" 'When a judgment is pronounced in open court, it is rendered and the clerk could . . . enter it on the minutes at any time during that term . . . .' ") (quoting *DuPree v. Hart*, 242 Ala. 690, 693, 8 So.2d 183, 186 (1942)); *Willmon v. Arizona*, 16 Ariz.App. 323, 324, 493 P.2d 125, 126 (1972) ("Judgment is complete and valid when orally pronounced in open court and entered in the minutes without anything further or any written judgment."); *Second Injury Fund v. Lupachino*, 45 Conn.App. 324, 337, 695 A.2d 1072, 1080 (1997) (" 'A judgment is in fact rendered in a cause tried to the court when the trial judge officially announces his decision orally in open court, or, out of court, signifies orally or in a writing filed with the clerk in his official capacity the decision pronounced by him . . . .' ") (quoting *Zoning Comm'n v. Fairfield Resources Management, Inc.*, 41 Conn.App. 89, 102, 674 A.2d 1335, 1342 (1996)); *Gorzik Corp. v. Mosman*, 315 S.W.2d 209, 211 (Mo.1958) (" 'Rendition' is a judicial act; entering is a ministerial act. The judgment is rendered when it is ordered by the court; it is entered when it is spread on the docket."); *Stimpson Hosiery Mills, Inc. v.*

*Pam Trading Corp.,* 98 N.C.App. 543, 553, 392 S.E.2d 128, 134 (1990) ("A judgment is 'rendered' when it is announced or declared in open court."); *Phillips v. Phillips,* 556 P.2d 607, 609–10 (Okla.1976) ("A judgment is 'rendered' when pronounced by the court."); *McCown v. Quillin,* 48 Tenn.App. 162, 169–70, 344 S.W.2d 576, 580 (1960) (" 'Rendered' means expressed or announced in a conclusive manner and with decisive effect, certainly so when at the same time notation of it is made on a judgment docket, or other more or less permanent memorandum record...."); *Knox v. Long,* 152 Tex. 291, 295, 257 S.W.2d 289, 291 (1953) (" 'The judgment of a court is what the court pronounces. Its rendition is [a] judicial act.... Its entry is a ministerial act ....' " (quoting *Coleman v. Zapp,* 105 Tex. 491, 494, 151 S.W. 1040, 1041 (1912))), *overruled on other grounds by Jackson v. Hernandez,* 155 Tex. 249, 285 S.W.2d 184 (1956); *Keim v. Anderson,* 943 S.W.2d 938, 942 (Tex.App.1997) ("Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk. [It] is distinguishable from the entry of judgment, which is a purely ministerial act by which judgment is made of record and preserved.").

■ A final order was rendered by the trial judge when he decisively announced in open court:

> Judgement in favor of the Plaintiff Selbe Hubbard, against Defendant Oliver Jones and Mattie B. Jones, in the amount of $5,000.00. And then the docket should reflect that judgment m[a]y be satisfied by payment of $2,550.00 within 30 days.

"The value of a simple docket entry which ... make[s] clear to everyone the disposition of each and every claim in a case cannot be overemphasized." *Fells Point Cafe,* 344 Md. at 133, 685 A.2d at 778 (1996) (quoting *Estep v. Georgetown Leather Design,* 320 Md. 277, 287, 577 A.2d 78, 82 (1990)). *Black's Law Dictionary* 554 (7th ed.1999) currently defines "entry of judgment" as "[t]he ministerial recording of a court's final decision, usu. by noting it in a judgment book or civil docket."

Entry of the judgment on the docket serves to make a permanent record in the court. *See Fells Point Cafe,* 344 Md. at 128, 685 A.2d at 775; *Davis,* 335 Md. at 710, 646 A.2d at 370. A permanent record of the judgment was created when the clerk placed it on the docket as entry number 13:

Matter passed for settlement. Court directed judgment in favor of Plaintiff, Selbe Hubbard and against Oliver Jones and Mattie B. Jones in the amount of $5,000.00. Judgment can be settled upon payment of $2,5[5]0.00 within 30 days.

■ Both required acts described in *Davis* have been satisfied. A judgment, however, will only be considered rendered by a court if it has clearly indicated that the issue submitted has been adjudicated completely and it has reached a final decision on the matter. As this Court previously stated:

"If a ruling of the court is to constitute a final judgment, it must have at least three attributes: (1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2-602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2-601."

*Fells Point Cafe,* 344 Md. at 129, 685 A.2d at 776 (1996) (quoting *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767, 773 (1989)). In the case *sub judice,* all three of these attributes have been satisfied. First, the trial court's ruling was an unqualified, final disposition of the matter in controversy. Second, it adjudicated all claims against all parties. Third, the clerk made a proper record of it in accordance with Maryland Rule 2-601. This Court concluded in *Davis,* 335 Md. at 711, 646 A.2d at 370:

[T]he trial court's ruling must be "an unqualified, final disposition of the matter in controversy." *Rohrbeck,* 318 Md. at 41, 566 A.2d at 773; *see also Anthony v. Clark,* 335 Md. 579, 644 A.2d 1070 [ (1994) ]. There are, however, no formal requirements regarding the rendition of a judgment. *See, e.g., United States v. Hark,* 320 U.S. 531, 534, 64 S.Ct.

359, 361, 88 L.Ed. 290, 292 (1944). As one court has observed, "[t]here are no hard and fast rules for determining what is a judgment." *Associated Press v. Taft–Ingalls Corp.*, 323 F.2d 114, 115 (6th Cir.1963). Rather, whether a judgment has been rendered in a particular case is an inquiry that must be made on a case-by-case basis and which focuses upon the actions and statements of the court. [Second alteration in original.]

■■■■ As illustrated, *supra,* the requirements for the rendering of a judgment were satisfied by the trial court. If the court had not properly rendered a final judgment, this agreement would have been a settlement agreement. A settlement agreement is not a final judgment. *Clark v. Elza,* 286 Md. 208, 213–15, 406 A.2d 922, 925–26 (1979); *see also Baltimore & Ohio R.R. Co. v. Equitable Bank,* 77 Md.App. 320, 328, 550 A.2d 407, 411 (1988); *Ramsey, Inc. v. Davis,* 66 Md.App. 717, 725, 505 A.2d 899, 903, *cert. denied,* 306 Md. 514, 510 A.2d 260 (1986). The Court of Special Appeals has distinguished between these two related entities:

> Although a settlement order resembles a final judgment, it is not the same. A settlement agreement is a contract which the parties enter into "for the settlement of a previously existing claim by a substituted performance." When this agreement is entered with the court, it is termed a settlement order; however, it is not a court order. Rather, it is a compromise between the parties, which they submit to the court to stay the proceedings in the case.

*Baltimore & Ohio R.R.,* 77 Md.App. at 328, 550 A.2d at 411 (quoting *Mitchell Properties, Inc. v. Real Estate Title Co.,* 62 Md.App. 473, 482, 490 A.2d 271 (1985)). When parties agree to settlement terms in the presence of the court and ask the court to render a judgment based on that settlement agreement and the court renders a judgment on the settlement, the agreement becomes a final judgment. *Montgomery County v. Revere Nat'l Corp.,* 341 Md. 366, 378, 671 A.2d 1, 7 (1996) ("Thus, an order entered on a docket pursuant to Rule 2–601, and having the effect of terminating the case . . . is a final judgment."). *Chertkof v. Harry C. Weiskittel Co.,* 251 Md.

544, 549, 248 A.2d 373, 376 (1968); *see also Mitchell Properties*, 62 Md.App. at 483, 490 A.2d at 276 ("If the court reduces the settlement order to a money judgment, it becomes a final judgment to the extent the underlying agreement address[es] the respective claims of the parties."). A court judgment makes the settlement agreement a judicial act. When parties endorse a judicial decree entered pursuant to a settlement agreement, "a critical element [is added] to [the] contractual act: judicial conclusiveness." *Kirsner v. Fleischmann*, 261 Md. 164, 170, 274 A.2d 339, 343 (1971); *see also Dorsey v. Wroten*, 35 Md.App. 359, 361, 370 A.2d 577, 579 (1977) ("[A] consent decree adds a critical element to the contractual act—judicial conclusiveness."). Looking at the actions and statements of the trial court, we conclude that there was a judgment rendered in this case. When the trial court reduced the proposed agreement to a consent judgment, it became a final judgment and an order of the court.

We now turn our analysis on whether a consent judgment is to be treated any differently than any other form of judgment. We start with an interpretation of Rule 2–612.[6] As we said in *State v. Bell*, 351 Md. 709, 720 A.2d 311 (1998):

We begin our analysis with the canons of statutory construction that are also generally applicable in respect to rule construction. *See State v. Harrell*, 348 Md. 69, 79, 702 A.2d 723, 728 (1997) ...; *In re Victor B.*, 336 Md. 85, 94, 646 A.2d 1012, 1016 (1994)....

We have said that "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors*, 339 Md. 24, 35, 660 A.2d 423, 429 (1995). Legislative intent must be sought first in the actual language of the statute. *Marriot[Marriott] Employees Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md.

---

**6.** "The court may enter a judgment at any time by consent of the parties. The clerk may enter a judgment at any time by consent of the parties if the judgment (a) is for a specified amount of money or for costs or denies all relief and (b) adjudicates all of the claims for relief presented in the action, whether by original claim, counterclaim, cross-claim, or third-party claim." Md. Rule 2–612.

437, 444–45, 697 A.2d 455, 458 (1997); *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (quoting *Tidewater[Tidewater/Havre de Grace Inc.] v. Mayor of Havre de Grace,* 337 Md. 338, 344, 653 A.2d 468, 472 (1995)); *Coburn v. Coburn,* 342 Md. 244, 256, 674 A.2d 951, 957 (1996); *Romm v. Flax,* 340 Md. 690, 693, 668 A.2d 1, 2 (1995); *Oaks,* 339 Md. at 35, 660 A.2d at 429; *Mauzy v. Hornbeck,* 285 Md. 84, 92, 400 A.2d 1091, 1096 (1979); *Board of Supervisors v. Weiss,* 217 Md. 133, 136, 141 A.2d 734 (1958). Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts normally do not look beyond the words of the statute to determine legislative intent. *Marriot[Marriott] Employees,* 346 Md. at 445, 697 A.2d at 458; *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 633 (1987); *Hunt v. Montgomery County,* 248 Md. 403, 414, 237 A.2d 35, 41 (1968).

. . . .

This Court recently stated that "statutory language is not read in isolation, but 'in light of the full context in which [it] appear[s], and in light of external manifestations of intent or general purpose available through other evidence.'" *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (alterations in original) (quoting *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989)). To this end,

[w]hen we pursue the context of statutory language, we are not limited to the words of the statute as they are printed.... We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

... [I]n *State v. One 1983 Chevrolet Van*, 309 Md. 327, 524 A.2d 51 (1987), ... [a]lthough we did not describe any of the statutes involved in that case as ambiguous or uncertain, we did search for legislative purpose or meaning—what Judge Orth, writing for the Court, described as "the legislative scheme." [*Id.* at] 344–45, 524 A.2d at 59. We identified that scheme or purpose after an extensive review of the context of Ch. 549, Acts of 1984, which had effected major changes in Art. 27, § 297. That context included, among other things, a bill request form, prior legislation, a legislative committee report, a bill title, related statutes and amendments to the bill. *See also Ogrinz v. James*, 309 Md. 381, 524 A.2d 77 (1987), in which we considered legislative history (a committee report) to assist in construing legislation that we did not identify as ambiguous or of uncertain meaning.

*Kaczorowski*, 309 Md. at 514–15, 525 A.2d at 632–33 (some citations omitted).

*Id.* at 717–19, 720 A.2d at 315–16 (alterations in original).

 Looking at the unambiguous wording of Maryland Rules 1–202(n), 2–601 and 2–612, as well as the minutes from the Court of Appeals Standing Committee on Rules of Practice and Procedure (Rules Committee) meetings, it is evident that a consent judgment is a judgment and an order of court. Its only distinction is that it is a judgment that a court enters at the request of the parties. Minutes from the Rules Committee meetings give insight to the intent behind the rules governing consent judgments: "[A] consent judgment ... must dispose of all claims in the action. ... [A]n order adjudicating less than all of the claims is not a judgment...." Minutes of the Rules Committee, at 31 (Oct. 17, 1981). "The proposed amendment[ ] [is] designed to establish a bright line test for entry of judgment...." Minutes of the Rules Committee (Sept. 13–14, 1985). Both statements permit the implication that a consent judgment is a judgment. There is no indication that the Rules Committee, or this Court, intended a consent judgment to be anything other than a final judgment.

Generally, we hold that consent judgments should be treated in the same fashion as any other form of judgment. The rationale is simple: A judgment is a judgment, regardless of whether it was rendered after a lengthy trial or an agreement by consent. The primary purpose in having a settlement agreement become a court order is to get the imprimatur of the court, i.e., to turn the agreement into a court order so that it will be controlled by the rules applicable to judgments and court orders.

Consent judgments are a hybrid of two competing aspects of the law. "Consent judgments or decrees are essentially agreements entered into by the parties which must be endorsed by the court. They have attributes of both contracts and judicial decrees." *Chernick v. Chernick,* 327 Md. 470, 478, 610 A.2d 770, 774 (1992). This "dual character ... has resulted in different treatment for different purposes." *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405 (1986). Whether the law of contracts or judgments governs the interpretation of an aspect of a consent judgment is determined by the character of the specific aspect. In the case *sub judice,* "[o]nce the court adopt[ed] the agreement of the parties and set[ ] it forth as a judgment of the court ... the contractual character of the agreement [was] subsumed into the court-ordered judgment." *Henderson v. Henderson,* 307 N.C. 401, 407, 298 S.E.2d 345, 350 (1983).

The United States Supreme Court has interpreted consent decrees as follows:

> A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees.

*Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378, 112 S.Ct. 748, 757, 116 L.Ed.2d 867 (1992). Our cases are in accord. "[O]rdinarily a judgment by consent, having been

enrolled 'under the eye and with the sanction of the court . . . should be considered as a judicial act. . . . ' " *Kirsner,* 261 Md. at 171, 274 A.2d at 343 (quoting *Cox v. Maryland Elec. Rys.,* 126 Md. 300, 304, 95 A. 43, 45 (1915)); *see also A.H. Smith Assocs. Ltd. Partnership v. Maryland Dept. of the Env't,* 116 Md.App. 233, 243, 695 A.2d 1252, 1257 (1997).

Other federal courts and a number of our brother state courts support this rationale. *Sinclair Oil Corp. v. Scherer,* 7 F.3d 191, 193 (10th Cir.1993) ("A consent decree is a negotiated agreement that is entered as a judgment of the court."); *United States v. Homestake Mining Co.,* 595 F.2d 421, 425 (8th Cir.1979) ("A consent decree is a judicial act and 'possesses the same force and character as a judgment rendered following a contested trial.' " (quoting *Siebring v. Hansen,* 346 F.2d 474, 477 (8th Cir.), *cert. denied,* 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965))); *Mastercraft Fabrics Corp. v. Dickson Elberton Mills, Inc.,* 821 F.Supp. 1503, 1510 (M.D.Ga. 1993) (" '[A] consent judgment is a conclusive adjudication and has the same force and effect as a judgment after trial.' " (quoting *Prudential Lines, Inc. v. Firemen's Ins. Co.,* 91 A.D.2d 1, 3, 457 N.Y.S.2d 272, 274 (1982))); *Interstate Power Co.,* 909 F.Supp. at 1238 (same as *Homestake Mining Co., supra* ); *Sun Life Assurance Co. v. Clyce,* 512 F.Supp. 430, 433 (N.D.Tex.1980) ("A consent judgment has substantially the same effect as any other judgment rendered in ordinary course."); *Frasemer v. Frasemer,* 578 So.2d 1346, 1348 (Ala. Civ.App.1991) ("A consent judgment is in the nature of a contract which, with the approval of the court, binds the parties as fully as any other judgment."); *California State Auto. Ass'n Inter–Ins. Bureau v. Superior Ct.,* 50 Cal.3d 658, 663, 268 Cal.Rptr. 284, 788 P.2d 1156, 1158 (1990) ("In a . . . consent decree, litigants voluntarily terminate a lawsuit by assenting to specified terms, which the court agrees to enforce as a judgment."); *McCarthy v. Iowa Dist. Ct.,* 386 N.W.2d 122, 126 (Iowa Ct.App.1986) (" 'Judgments by consent . . . are entered by sanction and order of the court, exercising a judicial function and power . . . . ' " (quoting *Iowa Water Pollution Control Comm'n v. Town of Paton,* 207 N.W.2d 755, 760

(Iowa 1973))); *Madison v. City of Detroit,* 182 Mich.App. 696, 701, 452 N.W.2d 883, 885 (1990) ("[O]nce a consent judgment is entered by the sanction and order of the court, it possesses the same force and character as other judgments."); *Guthrie v. Guthrie,* 233 Miss. 550, 556–57, 102 So.2d 381, 383 (1958) ("A consent judgment acquires the incidents of, and will be given the same force and effect as, judgments rendered after litigation."); *Gunning v. State Farm Mut. Auto. Ins. Co.,* 598 S.W.2d 479, 481 (Mo.Ct.App.1980) ("The judgment entered by consent of the parties was within the court's jurisdiction and should be given the same force as any other judgment."); *First Bank (N.A.) W. Mont. v. District Ct.,* 226 Mont. 515, 520, 737 P.2d 1132, 1135 (1987) ("The effect of a stipulation is the same as a judgment on the merits."); *Schillinger v. Brewer,* 215 Mont. 333, 338, 697 P.2d 919, 922 (1985) ("A judgment by stipulation is as binding as any judgment or verdict, no more or less."); *Chamberlin v. Chamberlin,* 206 Neb. 808, 817, 295 N.W.2d 391, 397 (1980) ("[A] consent judgment is treated as an agreement of the parties and is given greater force than an ordinary judgment. . . ."); *Macfadden v. Macfadden,* 49 N.J.Super. 356, 362, 139 A.2d 774, 778 (App.Div.) (A consent judgment " 'is regarded as an adverse judgment and is conclusive and effective . . . to the same extent as though entered after a full trial.' " (quoting *Fidelity Union Trust Co. v. Union Cemetery Ass'n,* 136 N.J.Eq. 15, 40 A.2d 205 (Ch.1944)), *cert. denied,* 27 N.J. 155, 141 A.2d 828 (1958)); *Public Serv. Elec. & Gas Co. v. Waldroup,* 38 N.J.Super. 419, 426, 119 A.2d 172, 175 (App.Div. 1955) (same); *Henderson,* 307 N.C. at 408, 298 S.E.2d at 350 ("The power of the court to enforce its judgment is no less and no greater for a court-adopted consent judgment than for a judgment resulting from a jury verdict in a hotly contested adversary proceeding."); *Third Nat'l Bank v. Scribner,* 212 Tenn. 400, 409, 370 S.W.2d 482, 486 (1963) (A " 'consent judgment acquires the incidents of, and will be given the same force and effect as, judgments rendered after litigation.' " (quoting 30A Am.Jur. *Judgments* 148)); *Birdwell v. Birdwell,* 819 S.W.2d 223, 226 (Tex.App.1991) ("A judgment rendered by

consent has the same force as a judgment entered after protracted litigation....").

The general trend of these courts can be appropriately summarized as follows:

> Despite the fact that a judgment has its genesis in an agreement between the parties, the judgment itself has an independent status. Once the agreement of the parties has been approved by the court and made a part of its judgment, the agreement is no longer merely a contract between private individuals but is the judgment of the court.
>
> ... "The fact that a judgment is rendered by consent gives it neither less nor greater force or effect than it would have had it been rendered after protracted litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties."

*Spradley v. Hutchison,* 787 S.W.2d 214, 219 (Tex.App.1990) (citations omitted) (quoting *Peddicord v. Peddicord,* 522 S.W.2d 266 (Tex.App.1975, writ ref'd n.r.e.)).

To interpret a consent judgment as anything other than a judgment would contradict common sense and undermine the efficiency that this legal tool brings to the judicial system. As one court stated:

> Consent judgments are entered daily in our courts, and if they do not have a binding effect as to all of the issues raised, it would not be long before resort to this expeditious way of terminating litigation would cease. Certainly, under our present practice, which allows parties to protect themselves by providing for partial judgments and special findings to be made on issues of fact, a general judgment entered by consent should have as great if not greater adjudicative efficacy as to all of the questions in issue as one entered after a trial.

*Waldroup,* 38 N.J.Super. at 426–27, 119 A.2d at 176.

■■■ We hold that, generally, for purposes of the issue before us in the case *sub judice,* consent judgments should normally be given the same force and effect as any other judgment, including judgments rendered after litigation. In

the case *sub judice*, the trial court met the requirements necessary to render a final consent judgment. *Revere, supra.*

## B. The Discount Provision

 We now turn our attention to whether the discount provision was part of the consent judgment rendered by the trial court. If it was part of the consent judgment, then it is an order of the court and, thus, subject to the Maryland Rules. We hold that the discount provision was an integral part of the consent judgment. Respondent argues that we should only look to the first sentence of the judgment, which states, "judgment in favor of Plaintiff, Selbe Hubbard and against Oliver Jones and Mattie B. Jones in the amount of $5,000.00." Her contention is that the second sentence, "Judgment can be settled upon payment of $2,5[5]0.00 within 30 days," should be ignored because it is contractual in nature and not a part of the consent agreement. This is simply wrong. The trial court's rendition of the entire judgment and its entry in the docket embody the consent judgment. Only by reading the consent judgment in whole can we interpret the intent and effect of the judgment. The discount provision clearly was intended by the parties and by the trial court to be part and parcel of the consent judgment.

We noted in *Roged, Inc. v. Paglee*, 280 Md. 248, 254, 372 A.2d 1059, 1062 (1977), a case involving a consent decree, that:

It is well settled that Maryland follows the objective test in the interpretation of contracts ... that where the language is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed: not what the parties intended the contract to mean, but what a reasonable person in the position of the parties would have thought it meant. We have extended this principle to the interpretation of judicial decrees. [Citations omitted.]

We had earlier said:

We fail to see why a somewhat analogous approach should not be taken in the interpretation of a judicial decree,

*whether or not it supplants a prior agreement of the parties*—that it is not so much a question of what the parties or what the court intended the decree to mean, but what a reasonable person in the position of the parties, or of the court, would have thought it meant.

*Monticello v. Monticello,* 271 Md. 168, 173, 315 A.2d 520, 523 (footnote omitted) *cert. denied,* 419 U.S. 880, 95 S.Ct. 145, 42 L.Ed.2d 121 (1974); *see Shanty Town Assocs. Ltd. Partnership v. Department of the Env't,* 92 Md.App. 103, 112, 607 A.2d 66, 70 (Where "the language of the consent order is clear and unambiguous . . . all terms are to be given their plain meaning in construing the order."), *cert. denied,* 328 Md. 94, 612 A.2d 1316 (1992).

■■■ The objective test of interpreting contracts can be summarized, "[t]he written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake." *Billmyre v. Sacred Heart Hosp.,* 273 Md. 638, 643, 331 A.2d 313, 317 (1975) (quoting *Slice v. Carozza Properties, Inc.,* 215 Md. 357, 368, 137 A.2d 687, 693 (1958)).

■■■ Implied in this test is that the interpretation of the language is to be of the entire language of the agreement, not merely a portion thereof. This implication was demonstrated by the Court of Special Appeals in *Shanty Town Assocs.,* 92 Md.App. 103, 607 A.2d 66. In that case involving the interpretation of a consent judgment, the court implied that one needs to read the complete language of a consent judgment to determine its purpose. Thus, to understand the true meaning of a consent order, the language of the judgment must be "[r]ead as a whole." *Id.* at 114, 607 A.2d at 71. "[T]he entire judgment—all provisions considered—should be read as a whole in the light of all the circumstances as well as of the conduct of the parties." *Hanson v. Hearn,* 521 So.2d 953, 955 (Ala.1988). "When interpreting a consent decree, or any other

agreement, words must be read in context. The decree must be read as a whole, each of its provisions being interpreted together with its other provisions." *Westinghouse Air Brake Div. v. United Electrical,* 294 Pa.Super. 407, 414, 440 A.2d 529, 533 (1982). "An interpretation of the judgment that gives meaning according to its entirety is favored over one that makes some part of it mere surplusage." *Hanson,* 521 So.2d at 955.

In the case *sub judice,* all parties agree as to what the judgment meant—a discount if paid within thirty days. The agreement was turned into a court order when the parties jointly sought to have the trial court render and cause the entering of a judgment. When respondent initiated action *in the case*—a "Petition for Disposition in Aid of Enforcement of Judgment"—and petitioners responded with an answer and a "Motion for Injunction" *in the case,* the issue was framed as an action to enforce a court judgment, i.e., a court order. At this stage, it was not an action for specific enforcement of a contract; it was a proceeding based upon a court judgment and court order. The rules regarding judgments and court orders apply in proceedings based upon the judgment and order, starting the moment the entire judgment is rendered by the judge and entered and indexed by the clerk.

The United States Court of Appeals for the District of Columbia has similarly interpreted consent agreements. In *Richardson v. Edwards,* 127 F.3d 97, 101 (D.C.Cir.1997), that court stated:

> The Supreme Court has warned against searching "for the 'purpose' of a consent decree" and then construing it in that light. [*United States v.*] *ITT Continental Baking* [*Co.*], 420 U.S. [223,] 235, 95 S.Ct. [926,] 933[, 43 L.Ed.2d 148 (1975) ]. The decree must be construed "as it is written." *Id.* at 238, 95 S.Ct. at 935[, 43 L.Ed.2d 148]. Ordinary "aids of construction," such as the circumstances surrounding the formation of the consent order, may be consulted. *Id.* at 238 & n. 11, 95 S.Ct. at 935 & n. 11[, 43 L.Ed.2d 148]. But ultimately the question for the lower court, when it inter-

prets a consent decree incorporating a settlement agreement, is what a reasonable person in the position of the parties would have thought the language meant.

 Read in its entirety, the wording of the consent judgment is plain and unambiguous. It clearly includes the language: "Judgment can be settled upon payment of $2,5[5]0.00 within 30 days." It is evident from the wording of the entire judgment that the parties intended for the discount provision to be part of the consent judgment. Generally, the consent judgment must be construed in its entirety, as written, rendered, and entered.

In the case *sub judice*, the discount provision was included in the consent judgment. Clearly it was the intent of the parties to agree to the discount provision. In fact, the transcript indicates that it is an essential part of the consent agreement:

MR. WRIGHT: Your Honor, by consent of the Parties, a judgement will be entered in the amount of $5,000.00 in favor of the—

MISS DAVIS: [$]2,550.

MR. WRIGHT:—in favor—well, you can hear out what I thought was our settlement proposal—in favor of the Plaintiff against the Defendants, which may be settled within 30 days by payment of [$]2[,]550.

Is that consistent with our agreement?

MISS DAVIS: That's good enough. That's fine, Judge.

The evidence points towards the conclusion that the discount provision was an integral part of the consent agreement. In other words, if the petitioner paid the *judgment* within thirty days, then the amount of the judgment would be discounted. Once the trial court entered the entire judgment, i.e., the money judgment and the discount provision, it became an order of the court. *See* Md. Rule 1–202(n) *supra.* As we have noted, a judgment is a judgment. We shall not enforce only part of its wording. Consequently, under the consent order, the judgment could be settled within thirty days at the payment of the discount sum.

## C. Time

Because the discount proviso is included in the consent judgment and is, therefore, an order of the court, Maryland Rule 1–203(a) applies to the case *sub judice*.

Maryland Rule 1–203(a) states:

(a) *Computation of time after an act, event, or default.* In computing any period of time prescribed by these rules, by rule or order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not included. If the period of time allowed is more than seven days, intermediate Saturdays, Sundays, and holidays are counted; but if the period of time allowed is seven days or less, intermediate Saturdays, Sundays, and holidays are not counted. The last day of the period so computed is included unless:

(1) it is a Saturday, Sunday, or holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or holiday; or

(2) the act to be done is the filing of a paper in court and the office of the clerk of that court on the last day of the period is not open, or is closed for a part of the day, in which event the period runs until the end of the next day that is not a Saturday, Sunday, holiday, or a day on which the office is not open during its regular hours.

We now look to the legislative intent behind this provision. As we noted, *supra*, the canons of statutory construction are applicable in respect to rule construction. The relevant language of Maryland Rule 1–203(a), "[i]n computing any period of time prescribed ... by rule or order of court ... [t]he last day of the period so computed is included unless: (1) it is a Saturday, Sunday, or holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or holiday" is plain and free from ambiguity. First, it dictates that it applies to court orders such as consent judgments. Second, it directs that if the last day of a period was a Saturday, which it was in the case *sub judice*, the period shall

run until the end of the next day that was not a Saturday, Sunday, or holiday—in this case, the following Monday.[7]

As we stated, *supra*, if petitioners paid the judgment within thirty days, then the amount of the judgment would be discounted. Under the facts of the case *sub judice*, the thirtieth day fell on Saturday, March 15, 1997. Pursuant to Maryland Rule 1–203(a), the period for payment of the judgment ran until the end of the next day that was not a Saturday, Sunday, or holiday. That day was Monday, March 17, 1997, the day that petitioners paid respondent the amount due under the discount provision, $2,550.00. "A set method of time computation brings a degree of certainty to the law." *Equitable Life Assurance Soc'y*, 306 Md. at 265, 508 A.2d at 141. We hold that petitioners' payment was timely and, therefore, satisfied the judgment.

## II. Conclusion

■■■ We hold that, generally, consent judgments are to be afforded the same force and effect as any other type of judgment. In the case *sub judice*, the discount proviso was part and parcel of the consent judgment and became a court order when the trial court rendered it on the record and the clerk entered it on the docket. That judgment, therefore, was governed by Maryland Rule 1–203(a) and the due date for payment was extended to the next working day by virtue of falling on a Saturday. Thus, petitioners' payment of the discounted judgment on Monday, March 17, 1997 was timely. Accordingly, we reverse.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO RE-VERSE THE JUDGMENT OF THE CIRCUIT COURT FOR KENT COUNTY; RESPONDENT TO PAY THE**

---

7. The Court of Special Appeals has similarly interpreted a case where Article 1, section 36 extended the last date for application of a statute from a Sunday to the next business day, which, as in the case *sub judice*, was a Monday. *See Hampton v. University of Maryland*, 109 Md.App. 297, 305–06, 674 A.2d 145, 149 (1996).

COSTS IN THIS COURT AND IN THE COURT OF SPE-
CIAL APPEALS.